**UNITED STATES BANKRUPTCY
COURT DISTRICT OF MAINE**

| | |
|---|---|
| **In re:**<br><br>**BENJAMIN LAWLOR,**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No. 26-20034** |

**FIRST AMENDED PLAN OF REORGANIZATION OF BENJAMIN LAWLOR
DATED ~~SEPTEMBER 21~~, 2026**

**By and through:**

**David C. Johnson, Esquire
Brendan T. Barry, Esquire
MARCUS, CLEGG
Portland, Maine 04101
(207) 828-8000
dcj@marcusclegg.com
jlc@marcusclegg.com
btb@marcusclegg.com**

**Attorneys For Benjamin Lawlor**

**Formatted:** Font: 12 pt, Bold

**Field Code Changed**

**ARTICLE I**
**INTRODUCTION**

Benjamin Lawlor is the debtor and debtor-in-possession in this chapter 11 bankruptcy case. The Debtor[1] commenced this Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 21, 2026. The Plan is a reorganization plan under chapter 11 of the Bankruptcy Code. It provides for the payment of Allowed Claims against the Debtor and/or its Estate to the extent and on the terms and conditions of this Plan.

**All Holders of Claims and Interests are encouraged to read this Plan in its entirety. Confirmation of this Plan is intended to and shall result in full and final satisfaction of any and all Claims or Interests that the Holders of such Claims or Interests may have against the Debtor and/or its Estate, as well as any defenses of any kind based on Claims provided for under this Plan or in existence prior to the Confirmation Date.**

[1] Capitalized terms, not specifically defined when the capitalized term is first utilized herein, shall have the meaning ascribed to such terms in Article II of this Plan.

## ARTICLE II
## DEFINITIONS

In addition to other terms defined elsewhere in this Plan, the following terms, which appear in this Plan as capitalized words, have the following meanings:

- "503(b)(9) Claim" means a Claim for the value of goods received by the Debtor in the ordinary course of its business within twenty (20) calendar days before the Petition Date, as provided for under § 503(b)(9) of the Bankruptcy Code.

- "Administrative Claim" means a claim for administrative costs or expenses that is allowable under §§ 365(b) or 503(b) of the Bankruptcy Code or under 28 U.S.C. § 1930, including, without limitation: (i) Non-Ordinary Course Administrative Claims; and (ii) Ordinary Course Administrative Claims.

- "Administrative Tax Claim" means a Claim that a governmental unit asserts against the Debtor for taxes or related interest or penalties that is allowable under § 503(b) of the Bankruptcy Code.

- "Allowed Administrative Claim" means an Allowed Claim that is an Administrative Claim.

- "Allowed Claim" means: (i) a Claim, as to which no proof of claim has been timely Filed, and is (a) listed in the Schedules in an amount greater than zero and not in an unknown amount, (b) not listed in the Schedules as disputed, contingent, or unliquidated, and (c) as to which no objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such Claim as set forth in this Plan or a Final Order of the Bankruptcy Court, or (d) as to which any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by a Final Order of the Bankruptcy Court; or (ii) a Claim as to which a proof of claim has been timely Filed and to which (a) no objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such Claim as set forth in this Plan or a Final Order of the Bankruptcy Court, or (b) any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by a Final Order of the Bankruptcy Court.

- "Allowed Priority Tax Claim" means an Allowed Claim that is a Priority Tax Claim.

- "Angela" means Angela Lawlor.

- "Assets" means "property of the estate" as described in § 541 of the Bankruptcy Code, including, but not limited to, Cash, Causes of Action, proceeds of insurance and insurance policies, all real and personal property (including rights or interests in any bonds that may have been posted by the Debtor), all files, books, and records of the Debtor and/or the

Estate, and all other property of any kind or nature owned by the Debtor or in which the Debtor asserts an interest.

- "Assumed Contracts" means any executory contracts and unexpired leases that the Debtor has assumed or will assume pursuant to § 365 of the Bankruptcy Code upon the Effective Date of this Plan.

- "Avoidance Causes of Action" means all Causes of Action arising under §§ 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, and subject to § 546 of the Bankruptcy Code.

- "Avoidance Recoveries" means recoveries from all Avoidance Causes of Action through settlement or entry of a Final Order with respect to any specific Avoidance Causes of Action.

- "Bankruptcy Code" means chapter 11 of title 11 of the United States Code as in effect as of the Petition Date.

- "Bankruptcy Court" means the United States Bankruptcy Court for the District of Maine.

- "Bankruptcy Rules" or "Bankruptcy Rule" means the Federal Rules of Bankruptcy Procedure and/or any applicable local rules of procedure or any one such rule, as indicated by the context.

- "Business Day" means any day other than a Saturday, Sunday, or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

- "Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor and bearing a Case Number of 26-20034 and pending in the Bankruptcy Court.

- "Cash" means United States dollars transmitted via wire transfer, ACH transfer and/or check at the sole discretion of the Debtor.

- "Cash Flow Projections" means projections forecasting the Debtor's future financial performance as attached hereto as ***Exhibit A***.

- "Causes of Action" means any and all claims, demands, rights, actions, suits, causes of action, third-party claims, counterclaims and cross-claims of, or liabilities or obligations owing to, the Debtor and/or the Estate of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort or otherwise, at law or in equity or under any other theory, that the Debtor and/or the Estate has or asserts or may have or assert, whether or not brought as of the Effective Date, and which have not been settled or otherwise resolved by a Final Order as of the Effective Date, including, but not limited to: (i) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (ii) the right to object to Claims or Interests; (iii) such claims and defenses as fraud, mistake, duress, and

usury; (iv) causes of action under Chapter V of the Bankruptcy Code (including Avoidance Causes of Action); (v) claims for tax refunds; (vi) claims to recover outstanding accounts receivable; (vii) any other claims which may be asserted against other Persons; and (viii) all claims and possible claims described in the Plan.

- "Claim" means a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor and/or the Estate.

- "Claimant" means any Person who holds an Allowed Claim against the Debtor and/or the Estate.

- "Claims Bar Dates" means, in addition to those bar dates that may be described elsewhere in this Plan, the bar dates for filing Claims against the Debtor and/or the Estate established by the Bankruptcy Court as follows: (a) June 22, 2026, for all Claims arising prior to the Petition Date (unless a different date is set by a Final Order of the Bankruptcy Court), excepting Claims of governmental units (as defined by the Bankruptcy Code); and (b) August 17, 2026, in relation to Claims arising prior to the Petition Date of governmental units.

- "Claims Objection Deadline" means the deadline for the Debtor to File objections to any asserted Claim, including 503(b)(9) Claims, Priority Tax Claims, Priority Non-Tax Claims, and General Unsecured Claims, which is no later than forty-five (45) days after the Effective Date, unless, upon motion of the Debtor, the Bankruptcy Court extends such deadline, as set forth in this Plan.

- "Confirmation" means the entry of an Order by the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

- "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

- "Confirmation Hearing" means a hearing or any number of hearings conducted by the Bankruptcy Court regarding Confirmation of this Plan.

- "Confirmation Order" means the Final Order confirming this Plan entered by the Bankruptcy Court.

- "Creditor" means the Holder of a Claim against the Debtor.

- "CST" means Central Street Studios, LLC, a Maine limited liability company owned by the Debtor that owns various real properties, including the properties where Maine Dentistry, MD Auburn and FST conduct business.

- "Cure Claim" means the right to payment of Cash or the Distribution of other Assets (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor, or as otherwise required by § 365(b) of the Bankruptcy Code as a condition of assumption or assumption and assignment

of such executory contract or unexpired lease, so that the Debtor may assume or assume and assign the contract or lease pursuant to §§ 365 or 1123(b)(2) of the Bankruptcy Code.

- "Debtor" means Benjamin Lawlor in every capacity, including as a debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code and as the reorganized debtor emerging from chapter 11 through this Plan.

- "Disallowed Claim" means a Claim or any portion thereof that: (i) has been disallowed by agreement or by Final Order of the Bankruptcy Court; (ii) is Scheduled in an unknown amount or as zero or as contingent, disputed, or unliquidated, or is not Scheduled and as to which no proof of claim or Administrative Claim has been Filed; or (iii) has been withdrawn by the Creditor.

- "Disputed Claim" means any Claim that is not an Allowed Claim or a Disallowed Claim.

- "Distribution" means any transfer by the Debtor under this Plan of Assets, which includes Cash, to a Holder of an Allowed Claim or the release of any Claims of the Debtor and/or the Estate against the Holder of an Allowed Claim.

- "Douglass Road Property" means the Debtor's real property located at 88 Douglass Road, Newry, Maine.

- "Effective Date" means the first Business Day that is fifteen (15) days following the entry of the Confirmation Order.

- "Estate" means the estate created in the Case under § 541 of the Bankruptcy Code.

- "File" or "Filed" means duly and properly filed with the Bankruptcy Court and reflected on the Bankruptcy Court's official docket for this Case.

- "Final Order" means an order or judgment of the Bankruptcy Court entered on the Bankruptcy Court's docket: (a) that has not been reversed, rescinded, stayed, modified, or amended; (b) that is in full force and effect; and (c) with respect to which (i) the time to appeal or seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending, or (ii) any such appeal or petition has been dismissed or resolved by agreement of the parties or by the highest court to which the order or judgment was appealed, or from which review, rehearing, remand, or a writ of certiorari was sought.

- "FSTR" means FST Rentals, LLC, , a Maine limited liability company owned by the Debtor.

- "General Unsecured Claims" means Prepetition Claims that are not Secured Claims, Administrative Claims, Priority Tax Claims, or Priority Non-Tax Claims.

- "Holder" means the owner of a Claim against or Interest in the Debtor, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferee to be deemed the Holder of the Claim for Distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either: (i) no objection to the transfer having been Filed; or (ii) any objection to such transfer having been resolved in favor of the transferor.

- "Impaired" means, when used with respect to a Claim or Interest, the legal, equitable, and/or contractual rights to which a Holder of a Claim or Interest is entitled when altered by this Plan.

- "Interest" means the interest, as the term "interest" is defined in § 101(17) of the Bankruptcy Code, of any Person or trust agreement, including the Trust, which holds an equity security in the Debtor, to the extent applicable, no matter how held.

- "IRS" means the United States Internal Revenue Service, part of the United States Department of the Treasury, a federal agency that is responsible for the collection and enforcement of certain taxes.

- "Judgment Rate" means the interest rate as set forth in 28 U.S.C. § 1961(a) on a federal judgment entered on the Petition Date.

- "Lawlor Enterprises" means Lawlor Enterprises, LLC, a Maine limited liability company owned by the Debtor and d/b/a Maine Dentistry.

- "Maine Dentistry" means Maine Dentistry Portland, LLC, a Maine limited liability company owned by the Debtor, which filed for protection under chapter 11 of the Code in this Court, pending as Case No. 25-20299.

- "Maine Savings" means Maine Savings Federal Credit Union.

- "Mammoth Lane Property" means the Debtor's real property located at 37/39 Mammoth Lane, Newry, Maine.

- "MD Auburn" means MD Auburn, LLC, a Maine limited liability company owned by the Debtor.

- "MD Management" means MD Management, a Maine corporation owned by the Debtor.

- "Non-Ordinary Course Administrative Claim" means Cure Claims, 503(b)(9) Claims, Professional Fee Claims~~, U.S. Trustee Fees~~, and Claims arising under §§ 503(b)(3)(D) and/or 503(b)(4) of the Bankruptcy Code, provided, however, the term specifically excludes Ordinary Course Administrative Claims.

- "Non-Ordinary Course Administrative Claim Bar Date" means, with respect to Non-

Ordinary Course Administrative Claims, the date by which the Holders of Non-Ordinary Course Administrative Claims must File a motion for allowance of such Claims, which deadline is thirty (30) calendar days after the Effective Date. Notice of the actual date upon which the Non-Ordinary Course Administrative Claims Bar Date falls shall be set forth in the Notice of the Effective Date (defined below) of the Plan that shall be served on parties-in-interest within seven (7) calendar days of the Effective Date.

- "Non-Priority Wage Claims" means Prepetition Claims for wages, salaries, commissions, vacation, severance, and/or sick leave pay and certain benefits, all as described in §§ 507(a)(4) and (5) of the Bankruptcy Code, but which do not qualify as Priority Wage Claims.

- "Ordinary Course Administrative Claim" means an Administrative Claim for administrative costs or expenses that were incurred in the ordinary course of the Debtor's operations and are allowable under § 503(b) of the Bankruptcy Code, provided, however, the term specifically excludes Non-Ordinary Course Administrative Claims.

- "Person" means the same as the term "person" as defined in § 101(41) of the Bankruptcy Code.

- "Petition Date" means February 18, 2026.

- "Plan" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as altered, amended, or modified from time to time.

- "Plan Documents" means any and all documents necessary to effectuate this Plan.

- "Portland Esthetics" means Portland Esthetics, PLLC, a Maine professional limited liability company owned by the Debtor.

- "Postpetition" means the time from and after the Petition Date through the Effective Date.

- "Post-Petition Bar Date" means the date which is thirty (30) days following the Confirmation Date.

- "Prepetition" means the Petition Date itself and all time prior to the Petition Date.

- "Prepetition Claim" means a Claim that arose prior to the Petition Date.

- "Priority Non-Tax Claims" means Prepetition Claims that are referred to in § 507(a) of the Bankruptcy Code, other than § 507(a)(8), that are not Administrative Claims and that are not required to be classified by this Plan.

- "Priority Tax Claims" means Prepetition Claims entitled to priority against the

Debtor under § 507(a)(8) of the Bankruptcy Code.

- "Priority Wage Claims" means Prepetition Claims for wages, salaries, commissions, vacation, severance, and/or sick leave pay and certain benefits as described in §§ 507(a)(4) and (5) of the Bankruptcy Code. Priority Wage Claims fall within the definition of Priority Non-Tax Claims.

- "Professionals" means those Persons providing advisory or consulting services to the Debtor: (i) retained pursuant to an order of the Bankruptcy Court in accordance with §§ 327, 363, 1103, or 1106 of the Bankruptcy Code and compensated for services rendered prior to the Confirmation Date pursuant to §§ 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to §§ 330 and 503(b)(2) of the Bankruptcy Code.

- "Professional Fee Claim" means an Administrative Claim under §§ 327, 328, 330, 331, 503, or 1103 of the Bankruptcy Code for compensation of professional services rendered or expenses incurred on the Debtor's behalf up to and through the Confirmation Date, but not a claim: (i) under § 503(b)(4) of the Bankruptcy Code for compensation of professional services rendered; or (ii) under § 503(b)(3)(D) of the Bankruptcy Code for expenses incurred in making a substantial contribution to the Debtor, which is a Non-Ordinary Course Administrative Claim and is subject to the Non-Ordinary Course Administrative Claim Bar Date.

- "Rejection Damage Claim" means a Claim for obligations or damages arising under an unexpired lease or executory contract that the Debtor rejects under § 365 of the Bankruptcy Code.

- "Rejection Damage Claim Bar Date" means thirty (30) calendar days after: (i) the Confirmation Date if rejected pursuant to the terms of this Plan; or (ii) entry of the order approving rejection of the contract or lease if rejected other than by the terms of this Plan.

- "Scheduled" means information set forth in the Schedules.

- "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by the Debtor with the Bankruptcy Court in this Case as they may have been or may be amended from time to time.

- "Secured Claim" means a Claim of a Creditor which is secured by a valid, enforceable, and unavoidable lien against any Assets, or that was subject to setoff under the Bankruptcy Code, to the extent of the value of such Creditor's interest in the Debtor's and/or the Estate's interest in such Assets, or to the extent of the amount subject to setoff, as the case may be.

- "State of Maine" means the State of Maine and any of its governmental agencies or offices.

- "Town of Newry" means the Town of Newry, Maine.

- "Town of Yarmouth" means the Town of Yarmouth, Maine.

- "TruChoice" means TruChoice Federal Credit Union.

- "Unclassified Claim" means any Claim that is not part of any Class, including Administrative Claims, UST Fees, Priority Tax Claims, and Priority Non-Tax Claims.

- "Unimpaired" means that the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim are not altered pursuant to this Plan.

- "U.S. Trustee" means the Office of the United States Trustee in relation to this Case.

- "U.S. Trustee Fees" means all the fees and charges assessed against the Debtor by the U.S. Trustee in the Case and due pursuant to 28 U.S.C. § 1930.

- "Yarmouth Property" means the real property owned by the Debtor ~~and Angela~~ located at 171 High Winds Drive, Yarmouth, Maine.

## ARTICLE III
## CLASSIFICATION OF CLAIMS

Each Holder of: (a) a Claim against the Debtor of whatever nature, whether or not scheduled and whether unliquidated, absolute or contingent, including all Claims arising from the rejection of Unexpired Leases and Executory Contracts; or (b) any interest in the Debtor or the Assets of the Debtor, shall be bound by the provisions of the Plan, and all such Claims and interests are hereby classified as follows:

**3.1 Unclassified Claims.** Unclassified Claims shall consist of all Allowed Administrative Claims, including, without limitation, Fees Claims and UST Fees and all Priority Claims.

**3.2 Classified Claims.** Classified Claims shall consist of Allowed Claims as set forth herein:

| Class | Type of Claim | Impaired/Unimpaired | Entitled to Vote (Yes/No) |
|---|---|---|---|
| Class 1 | Franklin Savings Bank | Impaired | Yes |
| Class 2 | Town of Newry | Impaired | Yes |
| Class 3 | Maine Savings Secured Claim | Impaired | Yes |
| Class 4 | Town of Yarmouth Secured Claim | Impaired | Yes |
| Class 5 | TruChoice Secured Claim | Impaired | Yes |
| Class 6 | Patterson Dental Secured Claim | Impaired | Yes |
| Class 7 | Maine Revenue Service Secured Claim | Impaired | Yes |
| Class 8 | Angela Lawlor Allowed Claims | Unimpaired | No |
| Class 9 | Guarantor Creditors Allowed Claims | Unimpaired | No |
| Class 10 | Emma Lee Campbell Allowed Claims | Impaired | Yes |
| Class 11 | General Unsecured Creditors | Impaired | Yes |
| Class 12 | Debtor's Interests | Unimpaired | No |

Formatted Table

Formatted Table

**ARTICLE IV**
**TREATMENT OF CLAIMS**

**4.1** **Unclassified Claims**. Unclassified Claims against the Debtor shall be paid in full in the following manner: (a) for Administrative Claims, other than Fee Claims, on the later of the Effective Date or the date the Administrative Claim becomes an Allowed Claim or the date agreed to between the Debtor and the claimant holding the Administrative Claim; (b) U.S. Trustee Fees shall be paid in accordance with 28 U.S.C. § 1930; and (c~~b~~) in relation to Fee Claims, the date upon which the Fee Claim becomes an Allowed Claim pursuant to an Order approving the Fee Claim.

Formatted: Justified

All Priority Claims shall be paid: (a) in accordance with the terms of the Bankruptcy Code; or (b) in accordance with such terms as may be agreed upon by the Debtor and each Holder of such Priority Claim.

Notwithstanding the provisions of § 1129(a)(9) of the Bankruptcy Code, the Internal Revenue Service [POC #1] has agreed to and shall receive deferred Cash payments over a period of **seven (7) year** from the Petition Date. Payments shall be made in equal, annual installments, and each installment shall include simple interest accrued on the unpaid portion of such Allowed Priority Tax Claim at the Federal Judgment Rate in effect as of the Effective Date per annum from and after the Effective Date; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Priority Tax Claim, in full, at any time on or after the Effective Date and before the expiration of the five-year period without premium or penalty.

**4.2** **Classified Claims**.

A. Class 1 - Franklin Savings Bank Secured Claim

Class 1 consists of the Allowed Secured Claims of the Franklin Savings Bank with respect to that certain Adjustable Rate Note given by the Debtor in favor of Franklin Savings in the original principal amount of $934,500.00, dated February 24, 2020, as modified by an Allonge dated April 18, 2020 (the "FSB Loan #1") and that certain Promissory Note given by the Debtor in favor of Franklin Savings in the original principal amount of $252,656.75, dated March 1, 2024 (the "FSB Loan #2").

The FSB Loan #1 is secured by a Mortgage on the Mammoth Lane Property and the Douglass Road Property (the "FSB Loan #1 Collateral"). The total amount outstanding under the FSB Loan #1 as of the Petition Date, according to the proof of claim filed by Franklin Savings Bank (POC #3), equaled $729,927.97. The FSB Loan #2 is secured by a Mortgage on the Mammoth Lane Property (the "FSB Loan #2 Collateral"). The total amount outstanding under the FSB Loan #2 as of the Petition Date, according to the proof of claim filed by Franklin Savings Bank (POC #4) equaled $264,488.50.

The Allowed Class 1 Claims shall be satisfied by being assumed by Debtor and reinstated pursuant to the existing contractual terms as of the Effective Date, except that both FSB Loan #1 and FSB Loan #2 shall become immediately due and payable in full on the fifth (5th) anniversary of the Effective Date (the "Class 1 Balloon Payment"). All legal, equitable and contractual rights of FSB

shall be otherwise left unaltered by the Plan. Any and all arrearage on the Class 1 Claims, including arrearage owed prepetition and any accrued post-petition interest, shall be paid as part of the Class 1 Balloon Payment.

All collateral securing the FSB Loan #1 shall secure the FSB Note 1, and all collateral securing the FSB Loan #2 shall secure the FSB Note 2.

B. Class 2 – Town of Newry Secured Claim

Class 2 consists of the Allowed Secured Claims of the Town of Newry. On April 1, 2025, the Town of Newry assessed real estate taxes against the Mammoth Lane Property and the Douglass Road Property for fiscal year 2025-2026 in the amount of $7,067.46 and $15,613.87 respectively (the "Newry Real Estate Taxes"). Pursuant to 36 M.R.S.A. § 552, an inchoate lien was placed on each of the Newry Properties secure payment of the Newry Real Estate Taxes allocable to each such property and remains in force until the same are paid.

The Allowed Class 2 Claim shall be satisfied in the form of two promissory notes given by the Debtor in favor of the Town of Newry with one note being in the face amount of the taxes owed on the Mammoth Lane Property (the "Mammoth Lane Note") and the other note in the face amount of the taxes owed on the Douglass Road Property (the "Douglass Road Note" and together with the Mammoth Lane Note, the "Class 2 Notes"). The Class 2 Notes shall accrue interest at a rate of 7.5% *per annum* pursuant to 11 U.S.C. § 511 and 36 M.R.S.A. §§ 186 and 505 and shall be payable in f~~ive (5) equal annual payments pursuant to 11 U.S.C. § 1129(a)(9)(D), provided that the Mammoth Lane Note shall become immediately due and payable in full upon the closing of the sale of the Mammoth Lane Property, and the Douglass Road Note shall become due and payable in full upon the closing of the sale of the Douglass Road Note. The first annual payments on the Class 2 Notes shall be made on the Effective Date~~ull on or before March 1, 2027. The Debtor may prepay the Class 2 Notes at any time without penalty.

All collateral securing the Town of Newry's Allowed Secured Claim with respect to the Mammoth Lane Property shall secure the Mammoth Lane Note, and all collateral securing the Town of Newry's Allowed Secured Claim with respect to the Douglass Road Property shall secure the Douglass Road Note.

C. Class 3 – Maine Savings Secured Claim

Class 3 consists of the Allowed Secured Claim~~s~~ of Maine Savings prior to the Petition Date. On or about January 7, 2022, the Debtor executed and delivered to Maine Savings that certain Note pursuant to which the Debtor borrowed the principal amount of $2,540,169.00 from Maine Savings (the "Maine Savings Secured Loan"). The Maine Savings Secured Loan is secured by a mortgage on the Yarmouth Property (the "Maine Savings Collateral"). The total amount outstanding under the Maine Savings Secured Loan as of the Petition Date, according to the proof of claim filed by Maine Savings (POC 21) equaled $2,572,357.35.

The Debtor intends to list the Yarmouth Property for sale immediately.[2] The net sale proceeds

[2] The Debtor will file substantially contemporaneously herewith an application to employ a real estate broker acceptable to Maine Savings to market the Yarmouth property on customary terms.

shall be used to pay ~~all~~ the Class 3~~5~~ Allowed Claim~~s~~ in their order of priority (*i.e.*, the Town of Yarmouth, Maine Savings, Maine Revenue Services and Angela). ~~(~~The Class 3~~5~~ Claim, together with interest at the contractual rate of 4% *per annum*, shall be paid from the net proceeds from the sale of the Yarmouth Property.

The Maine Savings Collateral shall secure the Class 3 Claim.

D. Class 4 - Town of Yarmouth Secured Claim

Class 4 consists of the Allowed Secured Claims of the Town of Yarmouth. On April 1, 2025, the Town of Yarmouth assessed real estate taxes against the Yarmouth Property for fiscal year 2025-2026 in the amount of $36,998.17 (the "Yarmouth Real Estate Taxes"). Pursuant to 36 M.R.S.A. § 552, an inchoate lien was placed on the Yarmouth Property to secure payment of the Yarmouth Real Estate Taxes and remains in force until the same are paid.

The Allowed Class 4 Claim, together with interest at a rate of 7.5% *per annum* pursuant to 11 U.S.C. § 511 and 36 M.R.S.A. §§ 186 and 505 , shall be paid from the net proceeds of the sale of the Yarmouth Property

All collateral securing the Town of Yarmouth's Allowed Secured Claim shall secure the Class 4 Claim.

E. Class 5 – TruChoice Secured Claim

Class 5 consists of the Allowed Secured Claims of TruChoice prior to the Petition Date. On or about August 5, 2022, the Debtor executed and delivered to TruChoice a Promissory Note – Disclosure Security Agreement in the original principal amount of $119,280.48 in favor of TruChoice (the "TruChoice Loan #1"). The TruChoice Loan #1 is secured by the Debtor's 2022 BMW X5 (the "BMW X5"). The amount outstanding on the TruChoice Loan #1 as of the Petition Date, according to the claim filed by TruChoice (POC 16), equaled $34,547.32.

On or about August 24, 2022, the Debtor executed to and delivered to TruChoice a Promissory Note – Disclosure Security Agreement in the original principal amount of $43,700.17 in favor of TruChoice (the "TruChoice Loan #2"). The TruChoice Loan #2 is secured by the Debtor's 2023 BMW X3 (the "BMW X3" and together with the BMW X5, the "TruChoice Collateral"). The amount outstanding on the TruChoice Loan #2 as of the Petition Date, according to the claim filed by TruChoice (POC 17), equaled $18,029.39.

Last, the Debtor entered into certain Visa Credit Card Agreement with TruChoice (the "TruChoice Credit Facility") in which Debtor agreed that any funds advanced under the TruChoice Credit Facility would be secured by the TruChoice Collateral. The amount outstanding on the TruChoice Credit Facility as of the Petition Date, according to the claim filed by TruChoice (POC 18), equaled $20,731.72.

In July 2026, the Debtor was in a car accident which resulted in the BMW X5 being considered a total loss by Debtor's insurance carrier. Debtor's insurance carrier paid out a total of $64,436.39 (the "Insurance Proceeds") for the loss of the BMW X5. The Insurance Proceeds are also

included as the TruChoice Collateral.

The Allowed Class 5 Claims shall be satisfied as follows: on the Effective Date, the Debtor shall utilize the Insurance Proceeds to pay both the TruChoice Loan 1 and the TruChoice Credit Facility in full. The TruChoice Loan #2 shall be satisfied in accordance with the terms and conditions of that certain Promissory Note – Disclosure Security Agreement executed by the Debtor on August 24, 2022, which documents the TruChoice Loan #2, which shall remain secured by the BMW X3.

F. Class 6 – Patterson Dental Secured Claim

Class 6 consists of the Allowed Secured Claims of Patterson Dental prior to the Petition Date. On or about October 25, 2023, the Debtor entered into that certain Installment Sale Contract – Security Agreement with Patterson Dental for the purchase of a CEREC PrimeScan Crown Scanner ("Scanner #1") of the original total price of $52,993.37 (the "Patterson Loan #1"). The Patterson Loan #1 is secured by Scanner #1 which Debtor values to be worth $25,000.00 as of the Petition Date.

Also on or about October 25, 2023, the Debtor entered into that certain Installment Sale Contract – Security Agreement with Patterson Dental for the purchase of an additional CEREC PrimeScan Crown Scanner ("Scanner #2") of the original total price of $52,993.37 (the "Patterson Loan #2"). The Patterson Loan #2 is secured by Scanner #2 which Debtor values to be worth $25,000.00 as of the Petition Date.

The Allowed Class 6 Claim obligation shall be assumed by Maine Dentistry in the context Maine Dentistry's pending chapter 11 case. The Debtor shall guaranty Maine Dentistry's obligations as to the same.

All collateral securing Patterson Dental's Allowed Secured Claim shall secure the Class 7 Note.

G. Class 7 – Maine Revenue Services Secured Claim

Class 7 consists of the Allowed Secured Claims of Maine Revenue Services prior to the Petition Date. Maine Revenue Services' claim is for Debtor's individual income tax due for the tax year beginning on January 1, 2024, and ending on December 31, 2024, which, according to Maine Revenue Services' proof of claim, equaled $73,150.02 (POC 15). Maine Revenue Services filed Notices of State Tax Liens in the Cumberland County Registry of Deeds and the Oxford County Registry of Deeds, among other registries, which secured its claim against all real estate owned by the Debtor in such counties, which includes the Debtor's residence at 171 High Winds Road, Yarmouth, Maine, the Mammoth Lane Property and the Douglass Road Property (collectively, the "Maine Revenue Services Liens").

The Maine Revenue Services Lien, plus post-petition interest at a rate of 9% *per annum*, shall be satisfied from the net proceeds of the sale of the Yarmouth Property.

The Maine Revenue Services Liens shall continue to secure the Debtor's obligations under the Class 7 Payment Plan.

F. Class 8 – Angela Secured Claim

Class 8 is impaired. Class 8 consists of all Allowed Secured Claims of Angela, including those established in that certain Divorce Judgment entered by Hon. Susan Driscoll of the Portland District Court, State of Maine, on May 28, 2026, and approved by this Court on July 28, 2026 [DE # 115] (the "Divorce Judgment"). The Divorce Judgment called for certain payments totaling $690,000 to be paid to Angela representing the property settlement component to the Divorce Judgment (collectively, the "Property Settlement Claim"). The Settlement Claim is secured by a springing mortgage against the Yarmouth Property as well as an abstract of divorce decree filed in the Cumberland County Registry of Deeds.

The Allowed Class 8 Secured Claim shall be satisfied from the net proceeds of the Yarmouth property sale, following satisfaction of Allowed Secured Claims with priority senior to Angela.

G. Class 9 – Guarantor Creditors Allowed Claims

Class Nine consists of the Allowed Claims of the following creditors (collectively, the "Guarantor Creditors"), (i) Machias Savings Bank ("Machias") with respect to the loan provided by Machias to Central Street Studios LLC, in the original principal amount of $ 1,387,500.00 dated July 14, 2022 and $85,000 dated April 7, 2023; (ii) Bangor Savings Bank ("Bangor"), with respect to the loans provided to (x) Central Street Studios LLC on October 23, 2020, in the original principal amount of $495,000.00 and on January 8, 2026, in the original principal amount of $512,000.00, (y) MD Auburn LLC on October 7, 2021 in the original principal amount of $70,000.00 and on January 29, 2021 in the original principal amount of $630,000.00, and (z) Lawlor Enterprises, LLC on January 8, 2026 in the original principal amount of $310,400.00; (iv) the United States Small Business Administration (the "SBA") with respect to the loan made to Lawlor Enterprises, LLC in the original principal amount of $500,000.00; (v) Dext Capital ("Dext") with respect to the loan provided to Lawlor Enterprises, LLC in the original principal amount of $107,000.00; (vi) Micah Sibert ("Sibert") with respect to the loan provided to Portland Esthetics, PLLC, in the original principal amount of $150,000.00; ~~and~~ (vi) Patterson Dental with respect to the purchase money financing extended to MD Auburn, LLC in the aggregate amount of $123,616.92; and (vii) GreatAmerica Financial Services Corporation with respect to ~~dated~~ the obligations due from Maine Dentistry under that certain Equipment Finance Agreement dated November 9, 2023, in the original financed amount of $205,000.00.

Formatted: Underline

Class Nine is unimpaired. All of Debtor's contingent obligations owed to the Guarantor Creditors with respect to the specified guarantor liabilities enumerated above shall be unmodified.

H. Class 10 – Emma Lee Campbell Allowed Claim

Class Ten is impaired. Class Ten consists of the Allowed Claims of Emma Lee Campbell, which consist of (i) a claim against the Debtor for an alleged unlawful disclosure of confidential information and negligence file as set forth in her complaint filed with the Cumberland County Superior Court for the State of Maine on June 20, 2024 (Docket No.: CV-2024-263) and (ii) a claim against the Debtor, *inter alias*, for alleged dental malpractice and vicarious liability as set forth in her

complaint filed with the Cumberland County Superior Court of the State of Maine on May 29, 2026 (Docket No.: CV-2026-236). Both of Campbell's claims were submitted to the Debtor's professional liability insurance company, Aspen American Insurance Company (the "Insurer"), which has accepted coverage for both claims. The Campbell's claims are unmodified *except that* her claims shall be limited to the applicable insurance policy limits.

Campbell's Claims are unmodified except that the recovery on her Claims, if any, shall be limited

I. Class 11 – General Unsecured Creditors

Holders of Allowed Class 11 Claims shall receive *pro rata* distributions of Plan Cash annually after payment of administrative fees as provided as estimated in Cash Flow Projections attached hereto, which amounts represent the Debtor's proposed disposable income during the next five years. *See* 11 U.S.C. § 1129(a)(15)(B). As set forth therein, Holders of Allowed Class 11 Claims shall receive five (5) annual *pro rata payments* The first payment to the holders of the Allowed Class 11 ~~9~~ claims shall be made on the first anniversary of the Effective Date.

J. Class 12 – Debtor's Interests

Class 12 is unimpaired. Class 12 consists of all the Debtor's interests in the property of the Estate.

**ARTICLE V**
**MEANS FOR EXECUTION OF PLAN**

**5.1 Plan Obligation Financing**

A. Proceeds from Sale of Certain Assets: As referenced above, the Debtor is engaging a real estate broker to market the Yarmouth Property. Net proceeds from the sale of the same shall be distributed to holders of Allowed Secured Claims secured by that property in the order of priority of their liens.

B. Insurance Proceeds: The damages recoverable under the Allowed Claims of Emma Lee Campbell, if any, shall be paid by the Insurer pursuant of the Debtor's professional liability insurance policy. As set forth above in the discussion of Class 5, insurance proceeds arising from the loss of one of the Debtor's vehicles, which proceeds are TruChoice's collateral, will be applied to satisfaction of TruChoice's Allowed Secured Claims.

C. Revenue from Debtor's Various Business Operations: As evidenced by the Cash Flow Projection, the Debtor expects to generate significant revenue from operations of his various entities – namely Maine Dentistry, MD Auburn, Lawlor Enterprises, MD Management and FSTR --on a going forward basis. The Debtor's salary and the revenue generated from his various business entities will be the primary source of funding for the Debtor's Plan obligations.

D. Recovery from Causes of Action: The Debtor may pursue various Causes of Action, if the Debtor believes that it will likely recover certain amounts from these Causes of Action. The proceeds from the recoveries on any Causes of Action the Debtor chooses to pursue are not expected to be material.

**5.2 Cram Down**. In the event that any class allowed to vote is deemed impaired under this Plan and refuses to accept the terms of the Plan, the Debtor shall, and hereby does, move the Bankruptcy Court to confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code. All Claims of creditors and/or other parties in interest shall be satisfied solely in accordance with the Plan.

**ARTICLE VI**
**EFFECTIVE DATE**

Unless the Confirmation Order has been stayed prior thereto, the Effective Date shall be the thirtieth (30) day following the Confirmation Date, provided that such date is not a weekend day or a holiday. If such date falls on a weekend day or a holiday, the Effective Date shall be the next day which is not a weekend day or a holiday.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1** **Assumption/Rejection of Certain Executory Contracts and Unexpired Leases**. Unless the subject of a motion to assume pending as of the Effective Date, or dealt with by an Order of this Court entered on or prior to the Effective Date, any and all Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected as of the Effective Date, if not earlier rejected by other Orders of the Bankruptcy Court.

**7.2** **Damages**. Any claim for damages arising from the rejection or deemed rejection of an Executory Contract or Unexpired Lease must be filed on or before **thirty (30) days** after the date of the Confirmation Order, or by such other date as may be specified by Order of the Bankruptcy Court and, if not so filed, will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 11 Claims.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

**8.1** **Legally Binding Effect**. The provisions of the Plan shall bind all Holders of Claims and interests, whether or not they accept the Plan.

**8.2** **Claims Subject to Allowance**. Notwithstanding any other provision of the Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

**8.3** **Pre-petition Claims and Amendments**. Each Claim as to which a proof of claim was required to be filed on or before the applicable Claims Bar Date and as to which a proof of claim was not filed on or before the applicable Claims Bar Date shall not, under any circumstances, become an Allowed Claim. In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim therefore filed on or before the applicable Claims Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of claim in which case any such amended proof of claim must be filed by the Confirmation Date. No order allowing or disallowing a Claim may be reconsidered, pursuant to Bankruptcy Code § 502(j) or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

**8.4** **Objections to Pre-petition Claims and Interests**. Claims and interests that arose prior to the Petition Date, and which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the applicable Claims Bar Date, shall be allowed in full, unless an objection to such Claim or interest is filed on or before the date which is thirty (30) days after the Confirmation Date. Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Plan, except as otherwise ordered by the Court.

**8.5** **Bar Date for an Objection to Post-Petition Claims**. Any Claim entitled to priority under Bankruptcy Code § 507(a)(2) arising before the Confirmation Date and still outstanding sixty (60) days thereafter shall be forever barred unless it is the subject of a proof of claim (or, in the case of a Fee Claim, an application for compensation) filed with the Bankruptcy Court on or before the Post-Petition Bar Date. Any Claim that is the subject of such proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within thirty (30) days after the Post-Petition Bar Date or such other date as is provided by Order upon motion of the Debtor, except that Fee Claims shall be Allowed only by Order of the Bankruptcy Court.

**8.6** **Delivery of Distributions**. Distributions and deliveries to Holders of Allowed Claims will be made at the addresses reflected in the proof of claim filed by the Holders of Allowed Claims or, if no proof of claim was filed, at the addresses set forth in changes delivered to the Debtor's Schedules; or at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim. If any distribution is returned as undeliverable, no further distributions to the Holder will be made unless and until the Debtor is notified of the Holder's then current address, at which time all missed distributions will be made to the Holder without interest. All Claims for undeliverable distributions must be made to the Debtor on or before the six (6th) month anniversary of the delivery date. After that date, all unclaimed property will be distributed pursuant to the terms of the Plan and the Claim of any Holder with respect to such property will be deemed disallowed, discharged, and forever barred from receiving any distribution

under this Plan.

**8.7** **Means of Cash Payment**. Cash payments made pursuant to the Plan will be in United States funds, by the means agreed to by the Debtor and the respective Holders of Allowed Claims, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtor shall reasonably determine.

**8.8** **Time Bar to Cash Payments**. Checks issued by the Debtor in respect of Distributions to Holders of Allowed Claims pursuant to this Plan will be null and void if not cashed within one hundred twenty (120) days of the date of their issuance. Requests for reissuance of any check shall be made to the Debtor by the Holder of the Allowed Claim with respect to which the check originally was issued. Any Claim in respect of such a voided check must be made on or before six (6) months after the date of issuance of the check. After that date, all Claims in respect of void checks will be discharged and forever barred and the Cash, including interest earned thereon, if any, shall be treated as an additional recovery of proceeds for distribution as of the date of expiration of said six (6) month period and thereafter shall be held and distributed in accordance with the terms of the Plan.

**8.9** **Debtor's Assets and Causes of Action**. On and after the Confirmation Date, and subject to compliance with the terms of this Plan, the Debtor may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Assets for the purpose of liquidating and converting such assets to cash, making distributions, and fully consummating the Plan. On and after the Confirmation Date, Causes of Action of the Debtor's Estate shall be preserved and retained by the Debtor free and clear of all liens, Claims, interests, and Encumbrances, and the Debtor shall have the exclusive right and standing to pursue, enforce, abandon, settle, release, and/or compromise any such Causes of Action. Confirmation of the Plan and occurrence of the Effective Date thereunder shall not serve to waive, release or preclude on *res judicata* or any other ground any Claim or Cause of Action of the Debtor. In the event that the Debtor recovers proceeds from any Cause of Action, the net proceeds shall be distributed to the Debtor's Allowed Unsecured Claimants on a *pro- rata* basis in accordance with the payment terms of the Plan.

**8.10** **Discharge**. To the fullest extent allowable under the Bankruptcy Code, and except as expressly provided otherwise in the Plan, the Debtor shall have the full benefit of the discharge provided by Bankruptcy Code § 1141(d). Without limiting the generality of the foregoing, and except as provided in the Plan, the Debtor shall, in accordance with § 1141(d)(5), be permanently released and discharged from all Claims, and all other Claims, Encumbrances, and debts that arose before the Confirmation Date whether or not any such Claim, Encumbrance or debt has been scheduled by the Debtor, a proof of claim has been filed or deemed filed, any such Claim is Allowed, or the Holder of any such Claim has accepted the Plan; provided, however, that nothing herein shall release or discharge the Debtor with respect to his obligations to make the payments and to provide the other consideration which is described in this Plan.

**8.11** **Injunction and Stay**. Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the close of the Chapter 11 Case. The entry of the Confirmation Order shall constitute a stay and injunction applicable to all

Claims, Encumbrance, and debts discharged.

**8.12** **Modification of Confirmed Plan**. After the Confirmation Date, the Debtor may modify the Plan ~~under Bankruptcy Code § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Plan, so long as the interests of Holders of Claims and interests are not materially and adversely affected thereby.~~as provided under Bankruptcy Code § 1127.

**8.13** **Substantial Consummation**. The Plan shall be deemed to have been substantially consummated when all of the requirements of Bankruptcy Code § 1101(2) have been satisfied.

**8.14** **Closing of Case**. The Chapter 11 Case shall be deemed closed at such time as the Order closing the case pursuant to Bankruptcy Code § 350 has been entered by the Bankruptcy Court on the motion of the Debtor, and the Order becomes a Final Order.

**8.15** **Retained Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Confirmation Date for the following purposes:

(a) To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or interest, including, without limitation, any Administrative Claim;

(b) To hear and determine all Claims arising from rejection of any Executory contract, including leases, and to consummate the rejection and Termination thereof;

(c) To liquidate damages in connection with any disputed contingent or unliquidated Claims;

(d) To adjudicate all Claims to, or ownership of any Assets of, the Debtor or in any proceeds thereof arising prior to and after the Effective Date;

(e) To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor prior to the Effective Date;

(f) To enter such Orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(g) To hear and determine any and all Causes of Action;

(h) To hear and determine any and all Fee Claims and all other Administrative Expenses which may be pending on, or made after, the Confirmation Date;

(i) To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

(j) To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Chapter 11 Case, or any controversy or dispute which may affect the Debtor's ability to implement or fund the Plan; and

(k) To hear and determine such other matters as the Bankruptcy Court, in its reasonable discretion, shall deem appropriate.

**8.16** **Dates**. Whenever the Plan requires the Debtor to make a distribution or take some other action on a particular date, such action shall be taken on the required date or as soon as practicable thereafter.

**8.17** **Assets of the Debtor**. Upon entry of the Confirmation Order, all Assets of the Debtor's Estate shall vest in the Debtor, free and clear of all Claims and Encumbrances, except to the extent otherwise provided in the Plan.

**8.18** **Exculpation**. Neither the Debtor, nor any of his respective attorneys, consultants, advisors, and agents (acting in such capacities), shall have or incur any liability to any entity for any act taken or omitted to be taken between the Petition Date and the Effective Date in the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, the Disclosure Statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the provisions of this section shall not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct, ~~or~~ breach of fiduciary duty, fraud or criminal activity. ~~Any of the forgoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.~~

**8.19** **Exemption from Transfer Taxes**. Pursuant to § 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deed relating to any of the real property Assets, and any other deeds, bills of sale or assignment executed in connection with any disposition of Assets under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**8.20** **Binding Effect**. Except as otherwise provided by in Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or interest in, the Debtor and his successors and assigns, whether or not the Claim or interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan. The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under Chapters 7 or 11 of the Bankruptcy Code).

**8.21** **Severability**. In the event that the Bankruptcy Court determines, prior to the

Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**8.22** **Headings**. Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**8.23** **Plan Controls**. To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

**8.24** **Notices.** Any pleading, notice, or other document required by this Plan to be served on or delivered to the Debtor must be sent by first class United States mail, postage prepaid, and by electronic mail to:

Benjamin Lawlor
117 High Winds Drive
Yarmouth, Maine 04096

With a copy to:

Marcus | Clegg
16 Middle Street, Suite 501
Portland, Maine 04101 Attn: David Johnson, Esq.
Email: dcj@marcusclegg.com

Dated: ~~September 21~~ ________________, 2026

By: /s/ Benjamin Lawlor
Debtor-in-Possession

/s/David C. Johnson
David C. Johnson
Jennie L. Clegg
Brendan T. Barry

Attorneys for the Debtor

MARCUS|CLEGG
16 Middle Street, Suite 501
Portland, ME 04101
(207) 828-8000
bankruptcy@marcusclegg.com
dcj@marcusclegg.com