**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **In re:**<br><br>**BENJAMIN LAWLOR,**<br><br>**Debtor.** | **Chapter 11**<br><br>**Case No. 26-20034** |

**DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S PLAN OF REORGANIZATION DATED SEPTEMBER 21, 2026**

By and through:

/s/ David C. Johnson
David C. Johnson, Esq.
Brendan T. Barry, Esq.

Attorneys for Benjamin Lawlor

MARCUS | CLEGG
16 Middle Street, Suite 501
Portland, ME 04101
(207) 828-8000
bankruptcy@marcusclegg.com

**DISCLAIMER**

**THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") AND THE *PLAN OF REORGANIZATION DATED SEPTEMBER 21, 2026* (THE "PLAN") AND THE ACCOMPANYING BALLOTS AND RELATED MATERIALS DELIVERED HEREWITH, ARE BEING PROVIDED BY BENJAMIN LAWLOR ("LAWLOR" OR THE "DEBTOR") TO KNOWN HOLDERS OF CLAIMS AND INTERESTS PURSUANT TO § 1125 OF THE BANKRUPTCY CODE IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN.**

**EACH HOLDER OF A CLAIM OR INTEREST AGAINST THE DEBTOR ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN MAY BE MADE, EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND § 1125 OF THE BANKRUPTCY CODE. NO HOLDER OF A CLAIM SHOULD RELY ON ANY INFORMATION RELATING TO THE DEBTOR, HIS ASSETS, OR THE PLAN, OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS.**

**THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE PLAN. NO SOLICITATION FOR OR AGAINST THE PLAN MAY BE MADE EXCEPT THROUGH THIS DISCLOSURE STATEMENT.**

**THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN. ALTHOUGH THE DEBTOR HAS MADE EVERY EFFORT TO ENSURE THAT THIS SUMMARY PROVIDES ADEQUATE INFORMATION WITH RESPECT TO THE PLAN, IT DOES NOT PURPORT TO BE COMPLETE AND IS QUALIFIED TO THE EXTENT IT DOES NOT SET FORTH THE ENTIRE TEXT OF THE PLAN. IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT, THEN THE PLAN SHALL CONTROL. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST SHOULD REVIEW THE PLAN IN ITS ENTIRETY.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH § 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE BANKRUPTCY RULES, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR.**

**IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED,**

**BY HOLDERS OF CLAIMS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

**HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

**HOLDERS OF CLAIMS OR INTERESTS SHOULD BE AWARE THAT THE PLAN CONTAINS TEMPORARY STAYS AND LIMITED RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS.**

**ALL OF THE PROJECTED RECOVERIES TO CREDITORS ARE BASED UPON THE ANALYSIS PERFORMED BY THE DEBTOR AND HIS PROFESSIONALS AND ADOPTED BY THE DEBTOR FOR USE IN THE PLAN.**

**THE DEBTOR RECOMMENDS THAT CREDITORS SUPPORT AND VOTE TO ACCEPT THE PLAN. IT IS THE OPINION OF THE DEBTOR THAT THE TREATMENT OF CREDITORS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.**

**YOUR VOTE ON THE PLAN IS IMPORTANT.**

## INTRODUCTION

On February 18, 2026, (the "Petition Date"), the Debtor, Benjamin Lawlor, filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maine. Since the Petition Date, the Debtor has remained in control and possession of his Assets as debtor-in-possession under §§ 1107 and 1108 of the Bankruptcy Code.

The Debtor submits this Disclosure Statement pursuant to § 1125 of the Bankruptcy Code in connection with the solicitation of votes to accept or reject the Plan.. The Bankruptcy Court will hold hearings on: (i) the adequacy of this Disclosure Statement; and (ii) confirmation of the Plan. The Debtor will request that the Bankruptcy Court approve this Disclosure Statement as containing "adequate information," in accordance with § 1125(b) of the Bankruptcy Code, to enable a hypothetical, reasonable investor typical of claimholders in a class of Claims entitled to vote on the Plan to make an informed judgment about whether to accept or reject the same.

This Disclosure Statement sets forth certain information regarding: (i) the Debtor's prepetition

operating and financial history; (ii) the Debtor's decision to file for relief under chapter 11 of the Bankruptcy Code; (iii) significant events that have occurred during the chapter 11 Case; (iv) the terms of the Plan; (v) the manner in which distributions will be made under the Plan; (vi) certain effects of confirmation of the Plan; (vii) certain risk factors associated with the Plan; and (viii) the confirmation process and the voting procedures that Holders of Claims entitled to vote on the Plan must follow for their votes to be counted.

## DEFINITIONS

In addition to other terms defined elsewhere in this Plan, the following terms, which appear in this Plan as capitalized words, have the following meanings:

- "503(b)(9) Claim" means a Claim for the value of goods received by the Debtor in the ordinary course of its business within twenty (20) calendar days before the Petition Date, as provided for under § 503(b)(9) of the Bankruptcy Code.

- "Administrative Claim" means a claim for administrative costs or expenses that is allowable under §§ 365(b) or 503(b) of the Bankruptcy Code or under 28 U.S.C. § 1930, including, without limitation: (i) Non-Ordinary Course Administrative Claims; and (ii) Ordinary Course Administrative Claims.

- "Administrative Tax Claim" means a Claim that a governmental unit asserts against the Debtor for taxes or related interest or penalties that is allowable under § 503(b) of the Bankruptcy Code.

- "Allowed Administrative Claim" means an Allowed Claim that is an Administrative Claim.

- "Allowed Claim" means: (i) a Claim, as to which no proof of claim has been timely Filed, and is (a) listed in the Schedules in an amount greater than zero and not in an unknown amount, (b) not listed in the Schedules as disputed, contingent, or unliquidated, and (c) as to which no objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such Claim as set forth in this Plan or a Final Order of the Bankruptcy Court, or (d) as to which any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by a Final Order of the Bankruptcy Court; or (ii) a Claim as to which a proof of claim has been timely Filed and to which (a) no objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period to object to such Claim as set forth in this Plan or a Final Order of the Bankruptcy Court, or (b) any objection, motion, or other proceeding to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement or by a Final Order of the Bankruptcy Court.

- "Allowed Priority Tax Claim" means an Allowed Claim that is a Priority Tax Claim.

- "Angela" means Angela Lawlor.

- "Assets" means "property of the estate" as described in § 541 of the Bankruptcy Code, including, but not limited to, Cash, Causes of Action, proceeds of insurance and insurance policies, all real and personal property (including rights or interests in any bonds that may have been posted by the

Debtor), all files, books, and records of the Debtor and/or the Estate, and all other property of any kind or nature owned by the Debtor or in which the Debtor asserts an interest.

- "Assumed Contracts" means any executory contracts and unexpired leases that the Debtor has assumed or will assume pursuant to § 365 of the Bankruptcy Code upon the Effective Date of this Plan.

- "Avoidance Causes of Action" means all Causes of Action arising under §§ 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, and subject to § 546 of the Bankruptcy Code.

- "Avoidance Recoveries" means recoveries from all Avoidance Causes of Action through settlement or entry of a Final Order with respect to any specific Avoidance Causes of Action.

- "Bankruptcy Code" means chapter 11 of title 11 of the United States Code as in effect as of the Petition Date.

- "Bankruptcy Court" means the United States Bankruptcy Court for the District of Maine.

- "Bankruptcy Rules" or "Bankruptcy Rule" means the Federal Rules of Bankruptcy Procedure and/or any applicable local rules of procedure or any one such rule, as indicated by the context.

- "Business Day" means any day other than a Saturday, Sunday, or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

- "Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor and bearing a Case Number of 26-20034 and pending in the Bankruptcy Court.

- "Cash" means United States dollars transmitted via wire transfer, ACH transfer and/or check at the sole discretion of the Debtor.

- "Cash Flow Projections" means projections forecasting the Debtor's future financial performance as attached hereto as ***Exhibit A***.

- "Causes of Action" means any and all claims, demands, rights, actions, suits, causes of action, third-party claims, counterclaims and cross-claims of, or liabilities or obligations owing to, the Debtor and/or the Estate of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort or otherwise, at law or in equity or under any other theory, that the Debtor and/or the Estate has or asserts or may have or assert, whether or not brought as of the Effective Date, and which have not been settled or otherwise resolved by a Final Order as of the Effective Date, including, but not limited to: (i) rights of setoff, counterclaim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (ii) the right to object to Claims or Interests; (iii) such claims and defenses as fraud, mistake, duress, and usury; (iv) causes of action under Chapter V of the Bankruptcy Code (including Avoidance Causes of Action); (v) claims for tax refunds; (vi) claims to recover outstanding accounts receivable; (vii) any other claims which may be asserted against other Persons; and (viii) all claims and possible claims described in the Plan.

- "Claim" means a claim, as defined in § 101(5) of the Bankruptcy Code, against the Debtor and/or the Estate.

- "Claimant" means any Person who holds an Allowed Claim against the Debtor and/or the Estate.

- "Claims Bar Dates" means, in addition to those bar dates that may be described elsewhere in this Plan, the bar dates for filing Claims against the Debtor and/or the Estate established by the Bankruptcy Court as follows: (a) June 22, 2026, for all Claims arising prior to the Petition Date (unless a different date is set by a Final Order of the Bankruptcy Court), excepting Claims of governmental units (as defined by the Bankruptcy Code); and (b) August 17, 2026, in relation to Claims arising prior to the Petition Date of governmental units.

- "Claims Objection Deadline" means the deadline for the Debtor to File objections to any asserted Claim, including 503(b)(9) Claims, Priority Tax Claims, Priority Non-Tax Claims, and General Unsecured Claims, which is no later than forty-five (45) days after the Effective Date, unless, upon motion of the Debtor, the Bankruptcy Court extends such deadline, as set forth in this Plan.

- "Confirmation" means the entry of an Order by the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

- "Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

- "Confirmation Hearing" means a hearing or any number of hearings conducted by the Bankruptcy Court regarding Confirmation of this Plan.

- "Confirmation Order" means the Final Order confirming this Plan entered by the Bankruptcy Court.

- "Creditor" means the Holder of a Claim against the Debtor.

- "CSS" means Central Street Studios, LLC, a Maine limited liability company owned by the Debtor that owns various real properties, including the properties where Maine Dentistry, MD Auburn and Lawlor Enterprises conduct business.

- "Cure Claim" means the right to payment of Cash or the Distribution of other Assets (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtor, or as otherwise required by § 365(b) of the Bankruptcy Code as a condition of assumption or assumption and assignment of such executory contract or unexpired lease, so that the Debtor may assume or assume and assign the contract or lease pursuant to §§ 365 or 1123(b)(2) of the Bankruptcy Code.

- "Debtor" means Benjamin Lawlor in every capacity, including as a debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code and as the reorganized debtor emerging from chapter 11 through this Plan.

- "Disallowed Claim" means a Claim or any portion thereof that: (i) has been disallowed by

agreement or by Final Order of the Bankruptcy Court; (ii) is Scheduled in an unknown amount or as zero or as contingent, disputed, or unliquidated, or is not Scheduled and as to which no proof of claim or Administrative Claim has been Filed; or (iii) has been withdrawn by the Creditor.

- "Disputed Claim" means any Claim that is not an Allowed Claim or a Disallowed Claim.

- "Distribution" means any transfer by the Debtor under this Plan of Assets, which includes Cash, to a Holder of an Allowed Claim or the release of any Claims of the Debtor and/or the Estate against the Holder of an Allowed Claim.

- "Douglass Road Property" means the Debtor's real property located at 88 Douglass Road, Newry, Maine.

- "Effective Date" means the first Business Day that is fifteen (15) days following the entry of the Confirmation Order.

- "Estate" means the estate created in the Case under § 541 of the Bankruptcy Code.

- "File" or "Filed" means duly and properly filed with the Bankruptcy Court and reflected on the Bankruptcy Court's official docket for this Case.

- "Final Order" means an order or judgment of the Bankruptcy Court entered on the Bankruptcy Court's docket: (a) that has not been reversed, rescinded, stayed, modified, or amended; (b) that is in full force and effect; and (c) with respect to which (i) the time to appeal or seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending, or (ii) any such appeal or petition has been dismissed or resolved by agreement of the parties or by the highest court to which the order or judgment was appealed, or from which review, rehearing, remand, or a writ of certiorari was sought.

- "FSTR" means FST Rentals, LLC, a Maine limited liability company owned by the Debtor.

- "General Unsecured Claims" means Prepetition Claims that are not Secured Claims, Administrative Claims, Priority Tax Claims, or Priority Non-Tax Claims.

- "Holder" means the owner of a Claim against or Interest in the Debtor, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferee to be deemed the Holder of the Claim for Distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either: (i) no objection to the transfer having been Filed; or (ii) any objection to such transfer having been resolved in favor of the transferor.

- "Impaired" means, when used with respect to a Claim or Interest, the legal, equitable, and/or contractual rights to which a Holder of a Claim or Interest is entitled when altered by this Plan.

- "Interest" means the interest, as the term "interest" is defined in § 101(17) of the Bankruptcy Code, of any Person or trust agreement, including the Trust, which holds an equity security in the Debtor, to the extent applicable, no matter how held.

- "IRS" means the United States Internal Revenue Service, part of the United States

Department of the Treasury, a federal agency that is responsible for the collection and enforcement of certain taxes.

- "Judgment Rate" means the interest rate as set forth in 28 U.S.C. § 1961(a) on a federal judgment entered on the Petition Date.

- "Lawlor Enterprises" means Lawlor Enterprises, LLC, a Maine limited liability company owned by the Debtor and d/b/a Maine Dentistry.

- "Maine Dentistry" means Maine Dentistry Portland, LLC, a Maine limited liability company owned by the Debtor, which filed for protection under chapter 11 of the Code in this Court, pending as Case No. 25-20299.

- "Maine Savings" means Maine Savings Federal Credit Union.

- "Mammoth Lane Property" means the Debtor's real property located at 37/39 Mammoth Lane, Newry, Maine.

- "MD Auburn" means MD Auburn, LLC, a Maine limited liability company owned by the Debtor.

- "MD Management" means MD Management Corporation, a Maine corporation owned by the Debtor.

- "Non-Ordinary Course Administrative Claim" means Cure Claims, 503(b)(9) Claims, Professional Fee Claims~~, U.S. Trustee Fees~~, and Claims arising under §§ 503(b)(3)(D) and/or 503(b)(4) of the Bankruptcy Code, provided, however, the term specifically excludes Ordinary Course Administrative Claims.

- "Non-Ordinary Course Administrative Claim Bar Date" means, with respect to Non-Ordinary Course Administrative Claims, the date by which the Holders of Non-Ordinary Course Administrative Claims must File a motion for allowance of such Claims, which deadline is thirty (30) calendar days after the Effective Date. Notice of the actual date upon which the Non-Ordinary Course Administrative Claims Bar Date falls shall be set forth in the Notice of the Effective Date (defined below) of the Plan that shall be served on parties-in-interest within seven (7) calendar days of the Effective Date.

- "Non-Priority Wage Claims" means Prepetition Claims for wages, salaries, commissions, vacation, severance, and/or sick leave pay and certain benefits, all as described in §§ 507(a)(4) and (5) of the Bankruptcy Code, but which do not qualify as Priority Wage Claims.

- "Ordinary Course Administrative Claim" means an Administrative Claim for administrative costs or expenses that were incurred in the ordinary course of the Debtor's operations and are allowable under § 503(b) of the Bankruptcy Code, provided, however, the term specifically excludes Non-Ordinary Course Administrative Claims.

- "Person" means the same as the term "person" as defined in § 101(41) of the Bankruptcy Code.

- "Petition Date" means February 18, 2026.

- "Plan" means this plan of reorganization under chapter 11 of the Bankruptcy Code, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form or as altered, amended, or modified from time to time.

- "Plan Documents" means any and all documents necessary to effectuate this Plan.

- "Portland Esthetics" means Portland Esthetics, PLLC, a Maine professional limited liability company owned by the Debtor.

- "Postpetition" means the time from and after the Petition Date through the Effective Date.

- "Post-Petition Bar Date" means the date which is thirty (30) days following the Confirmation Date.

- "Prepetition" means the Petition Date itself and all time prior to the Petition Date.

- "Prepetition Claim" means a Claim that arose prior to the Petition Date.

- "Priority Non-Tax Claims" means Prepetition Claims that are referred to in § 507(a) of the Bankruptcy Code, other than § 507(a)(8), that are not Administrative Claims and that are not required to be classified by this Plan.

- "Priority Tax Claims" means Prepetition Claims entitled to priority against the Debtor under § 507(a)(8) of the Bankruptcy Code.

- "Priority Wage Claims" means Prepetition Claims for wages, salaries, commissions, vacation, severance, and/or sick leave pay and certain benefits as described in §§ 507(a)(4) and (5) of the Bankruptcy Code. Priority Wage Claims fall within the definition of Priority Non-Tax Claims.

- "Professionals" means those Persons providing advisory or consulting services to the Debtor: (i) retained pursuant to an order of the Bankruptcy Court in accordance with §§ 327, 363, 1103, or 1106 of the Bankruptcy Code and compensated for services rendered prior to the Confirmation Date pursuant to §§ 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to §§ 330 and 503(b)(2) of the Bankruptcy Code.

- "Professional Fee Claim" means an Administrative Claim under §§ 327, 328, 330, 331, 503, or 1103 of the Bankruptcy Code for compensation of professional services rendered or expenses incurred on the Debtor's behalf up to and through the Confirmation Date, but not a claim: (i) under § 503(b)(4) of the Bankruptcy Code for compensation of professional services rendered; or (ii) under § 503(b)(3)(D) of the Bankruptcy Code for expenses incurred in making a substantial contribution to the Debtor, which is a Non-Ordinary Course Administrative Claim and is subject to the Non-Ordinary Course Administrative Claim Bar Date.

- "Rejection Damage Claim" means a Claim for obligations or damages arising under an unexpired lease or executory contract that the Debtor rejects under § 365 of the Bankruptcy Code.

- "Rejection Damage Claim Bar Date" means thirty (30) calendar days after: (i) the Confirmation Date if rejected pursuant to the terms of this Plan; or (ii) entry of the order approving rejection of the contract or lease if rejected other than by the terms of this Plan.

- "Scheduled" means information set forth in the Schedules.

- "Schedules" means the Schedules of Assets and Liabilities and the Statement of Financial Affairs Filed by the Debtor with the Bankruptcy Court in this Case as they may have been or may be amended from time to time.

- "Secured Claim" means a Claim of a Creditor which is secured by a valid, enforceable, and unavoidable lien against any Assets, or that was subject to setoff under the Bankruptcy Code, to the extent of the value of such Creditor's interest in the Debtor's and/or the Estate's interest in such Assets, or to the extent of the amount subject to setoff, as the case may be.

- "State of Maine" means the State of Maine and any of its governmental agencies or offices.

- "Town of Newry" means the Town of Newry, Maine.

- "Town of Yarmouth" means the Town of Yarmouth, Maine.

- "TruChoice" means TruChoice Federal Credit Union.

- "Unclassified Claim" means any Claim that is not part of any Class, including Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims.

- "Unimpaired" means that the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim are not altered pursuant to this Plan.

- "U.S. Trustee" means the Office of the United States Trustee in relation to this Case.

- "U.S. Trustee Fees" means all the fees and charges assessed against the Debtor by the U.S. Trustee in the Case and due pursuant to 28 U.S.C. § 1930.

- "Yarmouth Property" means the real property owned by the Debtor and Angela located at 171 High Winds Drive, Yarmouth, Maine.

## DESCRIPTION OF THE DEBTOR'S BACKGROUND

### A. The Debtor's Background

The Debtor is a licensed dentist residing in Yarmouth Maine. For the last several years, he has operated multiple dental practices – Maine Dentistry, MD Auburn and MD Portland – that provide services to patients in Portland, Auburn and Gray, Maine, respectively. More specifically these businesses provide preventive, restorative and cosmetic dental services to both private-pay and insured patients. The Debtor also owns Portland Esthetics, a medical spa located on Middle Street in Portland, that provides various skin treatments in a spa environment. The Debtor also owns MD Management, which provides centralized administrative oversight and support of the businesses. All of these entities, with the exception of Portland Esthetics, which owns the real estate it operates from, operate from real estate owned by CSS. The Debtor has guaranteed CSS's financial obligations to various creditors who financed (or refinanced) CSS's purchases of the real estate in its portfolio. As of the Petition Date, these businesses employed approximately forty (40) employees and generated substantial revenue, totaling more than $7.2 million in 2024 and $6.9 million in 2025. The businesses each maintain separate assets, liabilities, and financial records.

In addition, the Debtor owns the Yarmouth Property, where he currently resides, as well as the Douglass Road Property and the Mammoth Lane Property which are adjoining parcels located in the Town of Newry. The Douglass Road Property and the Mammoth Lane Property are investment properties that are rented and managed by FSTR. They also generate significant revenue, totaling $263,490 in 2024 and $248,750 in 2025. As part of this reorganization, the Debtor will take appropriate compensation, which will be used to satisfy his obligations under the Plan.

### B. Events Leading to the Debtor's Chapter 11 Filing

During the two years-plus before the Petition Date, a confluence of events placed extreme stress on the Debtor's finances and balance sheet. In 2023, the Debtor had just finished expanding his MD Portland office, started the medical spa, and discovered a previously unknown tax liability of $665,610 when his now ex-wife filed for divorce. While embroiled in a contentious divorce action with his now ex-wife, Angela, in state court, since late 2023 (the "Divorce Action") his businesses greatly suffered. That litigation was both very expensive and extremely distracting to the Debtor, and his business operations, deprived of his full attention, suffered. A full-bore trial in the Divorce Action was scheduled to be held in the spring of 2026. In addition, the Debtor suffered an injury which prevented him from practicing dentistry full-time for a period of time before the Petition Date. Portland Esthetics has historically struggled to generate a profit and had to be supported financially by both the Debtor and his other business operations.

Prior to the Petition Date, Maine Dentistry leased commercial space from an unrelated entity, Rudolph & Associates, LLC ("R&;A"); Portland Esthetics operated out of that space. In 2025, R&A initiated a forcible entry and detainer action against Maine Dentistry and significant and expensive litigation ensued. In December of last year, Maine Dentistry Portland filed for Chapter 11 bankruptcy protection. That case is still pending before the Court. MD Auburn has also struggled financially because it was difficult to find dentists to work at that location.

Taken together, these issues resulted in a massive blow to the Debtor's finances. He fell behind on various obligations, including income taxes and the mortgages on Yarmouth Property, the Mammoth Lane Property and the Douglass Road Property. In January of this year, Maine Savings initiated a foreclosure action against the Yarmouth Property. The Debtor filed for Chapter 11 bankruptcy protection on February 18, 2026, to preserve his assets, restructure his balance sheet and gain time to formulate this Plan.

### C. Summary of the Debtor's Most Significant Liabilities

As discussed below, the Debtor's primary secured creditors are (a) Maine Savings, which holds a mortgage on the Yarmouth Property to secure an obligation in excess of $2.5 million; (b) Franklin Savings which holds mortgages on the Mammoth Lane Property and the Douglass Road Property in the aggregate amount of more than $1 million; (c) Patterson Dental Supply, Inc. which is owed in excess of $100,000 secured by certain medical equipment; and (d) TruChoice which is owed approximately $72,000 secured by a motor vehicle and the insurance proceeds arising from

an accident involving another motor vehicle. The Towns of Yarmouth and Newry also hold tax claims secured by the Debtor's real property in those towns, as does Maine Revenue Service.

The IRS has filed a proof of claim asserting a priority claim of approximately $1,219,000.00~~900,000~~ and an unsecured claim of almost $150,000. The Debtor has a number of unsecured creditors, including multiple credit card providers owed significant amounts. Finally, the Debtor has certain obligations to Angela pursuant to the terms of a certain Divorce Judgment discussed below.

## THE CHAPTER 11 CASE

The following are significant events and issues arising during the Chapter 11 Case, including a discussion of certain deadlines that will be set in conjunction with confirmation of the Plan.

### A. The Debtor's Schedules and Statement of Financial Affairs.

The Debtor filed his Schedules and Statement of Affairs on March 10, 2026. They have been amended several times to more accurately reflect the Debtor's assets and liabilities. The Schedules indicate that the Debtor had approximately $5.66 million in assets and $11.8 million liabilities as of the Petition Date. The Debtor's primary assets are his real property – the Yarmouth Property, the Mammoth Lane Property and the Douglass Road Property – and his 100% membership interests in his various businesses.

On the liability side of the ledger, it is important to note that several million dollars of liabilities are comprised of the Debtor's guaranty liabilities for the debts of his businesses. All of those debts are in good standing and this Plan does not contemplate the Debtor having to satisfy the concomitant guarantees.

### B. Retention of Professionals

On March 12, 2026, the Bankruptcy Court authorized the retention of Marcus | Clegg as the Debtor's counsel in this Case. The same day, it authorized the retention of Thistle, Weaver & Morris, LLC ("TWM") to serve as the special counsel for the Debtor in the Divorce Action and BCM Advisory Group ("BCM") to be the Debtors financial consultant in this Case and an expert witness in the Divorce Action.

On April 17, 2026, the Bankruptcy Court authorized the employment of Sally Harkins, Inc. to market the Mammoth Lane Property and the Douglass Road Property for sale.[1] On April 27, 2026, the Bankruptcy Court authorized the retention of Archipelago Law as special counsel to represent the Debtor in the litigation of certain pre-Petition Date litigation against Christopher Kennison and Central Maine Custom Builders, LLC (the "Kennison Litigation"). On May 8, 2026, the Bankruptcy Court authorized the retention of Porthouse & Associates, LLC to provide tax preparation services for the Debtor and the estate. Finally, The Debtor intends to seek the retention of RE/MAX Shoreline as broker for the sale of the Yarmouth Property as contemplated by the Plan.

### C. The Divorce Judgment

Following intense negotiations, the Debtor and Angela reached the terms of a settlement in the Divorce Action after the Petition Date. The terms of the same were memorialized in a Divorce Judgment which was approved by the state court in May. On July 28, 2026, the Bankruptcy Court also approved the

---

[1] Following the retention of Harkins, the Debtor determined that retaining the Mammoth Lane Property and the Douglass Road Property and dedicating the net rental income from the same to the Plan is the most advantageous course of action going forward. As such, the Debtor does not intend to sell those Properties as this time.

terms of the Divorce Judgment and they have been incorporated into the Plan.[2]

**D. The Plan**

On September 21, 2026, the Debtor filed the Plan, this Disclosure Statement and related documents. As discussed in more detail below, the Debtor intends to utilize income from his various profitable business entities to satisfy his obligations under the Plan as set forth in the Cash Flow Projections, including satisfying the requirement of 11 U.S.C. § 1129(a)(15)(B). As part of that effort, he intends to sell the Yarmouth Property and dedicate the net sale proceeds to the Plan, satisfying a significant amount of secured debt in short order (and avoiding extremely onerous mortgage payments on a going-forward basis). Finally, he intends to wind down historically-unprofitable Portland Esthetics.

**E. Establishment of Bar Dates**

The Bar Date for filing proofs of claim with respect to any Prepetition Claims, except those of Governmental Units (as such term is defined in the Bankruptcy Code), but including any 503(b)(9) Claim, was June 22, 2026.

The deadline for Governmental Units to file Prepetition Claims was August 17, 2026.

**SUMMARY OF THE PLAN**

**THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATIONS, TREATMENTS, AND IMPLEMENTATION OF THE PLAN. IT IS QUALIFIED IN ITS ENTIRETY BY THE PLAN. ALL PARTIES ARE URGED TO READ THE PLAN IN FULL. TO THE EXTENT THAT THE PLAN IS INCONSISTENT WITH THE DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN SHALL BE CONTROLLING.**

**A. Introduction**

As discussed in more detail below, the Debtor intends to liquidate certain Assets, shut down non-performing business ventures and restructure various secured debts in order to effect a reorganization that will benefit all parties-in-interest. On the Effective Date, except as otherwise set forth in the Plan, the Estate's interest in all Assets, shall vest in the Debtor free and clear of any and all Claims, Interests, or defenses (including recoupment) with respect to any Claims, whether known or unknown, asserted or unasserted, or contingent or fixed. Allowed Claims shall receive certain distributions discussed in the Plan and summarized below.

**B. Voting Procedures**

**1. Ballots and Voting Deadlines**

Accompanying this Disclosure Statement is a ballot for acceptance or rejection of the Plan To be counted for voting purposes, ballots for acceptance or rejection of the Plan **MUST BE SERVED ON THE DEBTOR'S COUNSEL** listed immediately below via mail or e-mail by no later than **___________, 2026** (the "Voting Deadline"):

[2] As part of that order approving the compromise, the Bankruptcy Court authorized the dismissal with prejudice of a related adversary proceeding by the Debtor against Angela claiming that she had slandered him. The adversary proceeding was initiated before the Petition Date in state court and was subsequently transferred by the Debtor to the Bankruptcy Court.

**Marcus | Clegg**
**Attn: David Johnson, Esq.**
**16 Middle Street, Suite 501**
**Portland, Maine 04101**
**dcj@marcusclegg.com**

**BALLOTS NOT ACTUALLY RECEIVED BY THE VOTING DEADLINE MAY NOT BE COUNTED~~, AND BALLOTS THAT DO NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN~~. BALLOTS MAILED TO THE CLERK OF THE BANKRUPTCY COURT SHALL NOT BE COUNTED, UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT.**

Even if you do not vote to accept the Plan, you may still be bound by it if it is accepted by the requisite Holders of Claims and Interests and confirmed by the Bankruptcy Court.

**2. Parties in Interest Entitled to Vote on the Plan**

Pursuant to the Bankruptcy Code, only Holders of Allowed Claims or Interests in classes of Claims that are "Impaired" (as such term is defined in § 1124 of the Bankruptcy Code) are entitled to vote to accept or reject the Plan. Under § 1124 of the Bankruptcy Code, a class of Claims or Interests is "impaired" under a plan unless, with respect to each Claim or Interest of such class, the plan, among other things, leaves unaltered the legal, equitable, and contractual rights of the Holder of the Claim or Interest

In addition, any Claim to which an objection has been filed is not entitled to vote unless the Bankruptcy Court, upon timely application of the Holder of the Claim, temporarily allows the Claim in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Any such application must be heard and determined by the Bankruptcy Court on or before the voting deadline. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the vote was not solicited or made in good faith or in accordance with the provisions of the Bankruptcy Code.

## C. Confirmation Procedure

### 1. Confirmation Hearing

The Confirmation Hearing is scheduled before the Honorable Peter G. Cary, Chief United States Bankruptcy Judge, for ____**.m. on ______________________________, 2026**. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement made at the Confirmation Hearing or such continued Confirmation Hearing or through an order entered by the Bankruptcy Court.

### 2. Procedure for Objections

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party and all grounds for the objection. Any objection must be filed with the Bankruptcy Court and served on counsel for the Debtor by **_______________, 2026**.

You may file your response by e-mailing the response to efiling@meb.uscourts.gov; by mailing the response to U.S. Bankruptcy Court, District of Maine, 537 Congress Street, 2nd Floor, Portland, Maine; by

hand-delivering the response to the Clerk of the Court at 537 Congress Street, 2nd Floor, Portland, Maine 04101; or by filing via the Bankruptcy Court's CM/ECF filing system.

Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court. Although not required, it would assist parties if the amount of the Claim and the number of any filed proof of claim held by the objecting party is identified in such objection.

**3. Requirements for Confirmation**

The Bankruptcy Court will confirm the Plan only if it meets all the requirements of § 1129 of the Bankruptcy Code. Among the requirements for confirmation are that the Plan is: (a) acceptance by all impaired classes of Claims that are entitled to vote or, if rejected by an impaired class, that the Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such class; (b) feasible; and (c) in the "best interests" of creditors impaired under the Plan that have not voted to accept the same. The Bankruptcy Court must also find that:

- The Plan has classified Claims in a permissible manner;
- The Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and
- The Plan was proposed in good faith.

**4. Voting and Acceptance of the Plan**

Except as otherwise provided by the Bankruptcy Code, as a condition to confirmation of the Plan, the Bankruptcy Code requires each class of impaired Claims or Interests entitled to vote on the Plan to vote to accept the same. The Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by Holders of two-thirds (2/3) in dollar amount and more than one half (1/2) in number of those Claims in that class. ~~Holders of Claims that fail to vote may be deemed to have accepted the Plan.~~ A vote, moreover, may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that it was not made or solicited in good faith.

Classes of Claims that are Unimpaired under the Plan are conclusively presumed to have accepted the Plan, therefore, are not entitled to vote on the same. Classes of Claims that receive no distribution under the Plan are conclusively presumed to have rejected it and are not entitled to vote on the Plan.

In the event that any class allowed to vote is deemed impaired under the Plan and refuses to accept the terms of the same, then the Debtor will request that the Bankruptcy Court confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code. All Claims of creditors and/or other parties in interest shall be satisfied solely in accordance with the Plan.

To obtain confirmation under those circumstances, the Debtor must show, among other things, that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired class of Claims that has rejected the Plan.

Under § 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" to a class of Claims or Interests if, among other things, a plan provides: (i) with respect to Secured Claims, that each Holder of a Claim included in the rejecting class will receive or retain on account of its Claim property that has a value, as of the Effective Date of a plan, equal to the allowed amount of such Claim; and (ii) with respect to Unsecured Claims and Interests, that the Holder of any Claim or Interest that is junior to the Claims or Interest of such class will not

receive or retain on account of such junior Claim or Interest any property at all unless the senior class is paid in full. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to receive on account of its Claim or Interest. The Debtor submits that these requirements are or will be met here.

**AS THE HOLDERS OF CLAIMS IN CERTAIN CLASSES ARE IMPAIRED AND MAY REJECT THE PLAN, ALL PARTIES ARE ADVISED THAT THE DEBTOR MAY SEEK CONFIRMATION OF THE PLAN UNDER THE "CRAM DOWN" PROVISIONS OF § 1129(b) OF THE BANKRUPTCY CODE.**

**D. Classification and Treatment of Claims and Interests**

The Plan provides for the settlement and satisfaction by the Debtor of all classes of claims identified in the Plan in the amounts and over the timeframes set forth herein. The following is a short summary of the structure and projected outcome of the Plan. The Bankruptcy Code requires the Plan to place certain Claims in classes. Other Claims can remain unclassified. The types and treatment of Unclassified Claims is discussed initially below, followed by the types and treatment of Classified Claims.

**1. Unclassified Claims**

As noted, certain types of Claims are not placed into classes. Instead, such Claims are Unclassified Claims. Unclassified Claims are unimpaired, and Holders of Unclassified Claims do not vote on the Plan because they are automatically entitled to specific treatment provided for Unclassified Claims under the Bankruptcy Code or the Claim treatment has been agreed upon by the Debtor and a particular claimant.

Unclassified Claims against the Debtor shall be paid in full in the following manner: (a) for Administrative Claims, other than Fee Claims, on the later of the Effective Date or the date the Administrative Claim becomes an Allowed Claim or the date agreed to between the Debtor and the claimant holding the Administrative Claim; (b) U.S. Trustee Fees shall be paid in accordance with 28 U.S.C. § 1930; and (c~~b~~) in relation to Fee Claims, the date upon which the Fee Claim becomes an Allowed Claim pursuant to an Order approving the Fee Claim.

All Priority Claims shall be paid: (a) in accordance with the terms of the Bankruptcy Code; or (b) in accordance with such terms as may be agreed upon by the Debtor and each Holder of such Priority Claim.

Notwithstanding the provisions of § 1129(a)(9) of the Bankruptcy Code, the Internal Revenue Service [POC #1] has agreed to and shall receive deferred Cash payments over a period of **seven (7) year** from the Petition Date. Payments shall be made in equal, annual installments, and each installment shall include simple interest accrued on the unpaid portion of such Allowed Priority Tax Claim at the Federal Judgment Rate in effect as of the Effective Date per annum from and after the Effective Date; provided, however, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Priority Tax Claim, in full, at any time on or after the Effective Date and before the expiration of the five-year period without premium or penalty.

**Persons holding Administrative Claims that do not file and serve a motion for payment on or before the Administrative Claim Bar Date shall be forever barred from asserting those Claims against the Debtor, the Estate, and/or the Assets. The Debtor or any other party-in-interest, including the Debtor, may file an objection to any motion requesting allowance of an Administrative Claim in**

**accordance with the Bankruptcy Code and/or any applicable Bankruptcy Rules.**

**2. Classified Claims**

**a. Summary of Classifications**

Claims against the Debtor (other than the Unclassified Claims described above) are Classified into the following classes:

| Class | Type of Claim | Impaired/ Unimpaired | Entitled to Vote (Yes/No) |
|---|---|---|---|
| Class 1 | Franklin Savings Bank | Impaired | Yes |
| Class 2 | Town of Newry | Impaired | Yes |
| Class 3 | Maine Savings Secured Claim | Impaired | Yes |
| Class 4 | Town of Yarmouth Secured Claim | Impaired | Yes |
| Class 5 | TruChoice Secured Claim | Impaired | Yes |
| Class 6 | Patterson Dental Secured Claim | Impaired | Yes |
| Class 7 | Maine Revenue Service Secured Claim | Impaired | Yes |
| Class 8 | Angela Lawlor Allowed Claims | Unimpaired | No |
| Class 9 | Guarantor Creditors Allowed Claims | Unimpaired | No |
| Class 10 | Emma Lee Campbell Allowed Claims | Impaired | Yes |
| Class 11 | General Unsecured Creditors | Impaired | Yes |
| Class 12 | Debtor's Interests | Unimpaired | No |

**b. Treatment of Classified Claims**

Class 1 - Franklin Savings Bank Secured Claim

Class 1 consists of the Allowed Secured Claims of the Franklin Savings Bank with respect to that certain Adjustable Rate Note given by the Debtor in favor of Franklin Savings in the original principal amount of $934,500.00, dated February 24, 2020, as modified by an Allonge dated April 18, 2020 (the "FSB Loan #1") and that certain Promissory Note given by the Debtor in favor of Franklin Savings in the original principal amount of $252,656.75, dated March 1, 2024 (the "FSB Loan #2").

The FSB Loan #1 is secured by a Mortgage on the Mammoth Lane Property and the Douglass Road Property (the "FSB Loan #1 Collateral"). The total amount outstanding under the FSB Loan #1 as of the Petition Date, according to the proof of claim filed by Franklin Savings Bank (POC #3), equaled $729,927.97. The FSB Loan #2 is secured by a Mortgage on the Mammoth Lane Property (the "FSB Loan #2 Collateral"). The total amount outstanding under the FSB Loan #2 as of the Petition Date, according to the proof of claim filed by Franklin Savings Bank (POC #4) equaled $264,488.50.

The Allowed Class 1 Claims shall be satisfied by being assumed by Debtor and reinstated pursuant to the existing contractual terms as of the Effective Date, except that both FSB Loan #1 and FSB Loan #2 shall become immediately due and payable in full on the fifth (5th) anniversary of the Effective Date (the "Class 1 Balloon Payment"). All legal, equitable and contractual rights of FSB shall be otherwise left unaltered by the Plan. Any and all arrearage on the Class 1 Claims, including arrearage owed prepetition and any accrued post-petition interest, shall be paid as part of the Class 1 Balloon Payment.

All collateral securing the FSB Loan #1 shall secure the FSB Note 1, and all collateral securing the FSB Loan #2 shall secure the FSB Note 2.

Class 2 – Town of Newry Secured Claim

Class 2 consists of the Allowed Secured Claims of the Town of Newry. On April 1, 2025, the Town of Newry assessed real estate taxes against the Mammoth Lane Property and the Douglass Road Property for fiscal year 2025-2026 in the amount of $7,067.46 and $15,613.87 respectively (the "Newry Real Estate Taxes"). Pursuant to 36 M.R.S.A. § 552, an inchoate lien was placed on each of the Newry Properties secure payment of the Newry Real Estate Taxes allocable to each such property and remains in force until the same are paid.

The Allowed Class 2 Claim shall be satisfied in the form of two promissory notes given by the Debtor in favor of the Town of Newry with one note being in the face amount of the taxes owed on the Mammoth Lane Property (the "Mammoth Lane Note") and the other note in the face amount of the taxes owed on the Douglass Road Property (the "Douglass Road Note" and together with the Mammoth Lane Note, the "Class 2 Notes"). The Class 2 Notes shall accrue interest at a rate of 7.5% *per annum* pursuant to 11 U.S.C. § 511 and 36 M.R.S.A. §§ 186 and 505 and shall be payable in full on or before March 1, 2027. The Debtor may prepay the Class 2 Notes at any time without penalty. ~~The Allowed Class 2 Claim shall be satisfied in the form of two promissory notes given by the Debtor in favor of the Town of Newry with one note being in the face amount of the taxes owed on the Mammoth Lane Property (the "Mammoth Lane Note") and the other note in the face amount of the taxes owed on the Douglass Road Property (the "Douglass Road Note" and together with the Mammoth Lane Note, the "Class 2 Notes"). The Class 2 Notes shall accrue interest at a rate of 7.5% *per annum* pursuant to 11 U.S.C. § 511 and 36 M.R.S.A. §§ 186 and 505 and shall be payable in five (5) equal annual payments pursuant to 11 U.S.C. § 1129(a)(9)(D), provided that the Mammoth Lane Note shall become immediately due and payable in full upon the closing of the sale of the Mammoth Lane Property, and the Douglass Road Note shall become due and payable in full upon the closing of the sale of the Douglass Road Note. The first annual payments on the Class 2 Notes shall be made on the Effective Date. The Debtor may prepay the Class 2 Notes at any time without penalty.~~

All collateral securing the Town of Newry's Allowed Secured Claim with respect to the Mammoth Lane Property shall secure the Mammoth Lane Note, and all collateral securing the Town of Newry's Allowed Secured Claim with respect to the Douglass Road Property shall secure the Douglass Road Note.

Class 3 – Maine Savings Secured Claim

Class 3 consists of the Allowed Secured Claim~~s~~ of Maine Savings prior to the Petition Date. On or about January 7, 2022, the Debtor executed and delivered to Maine Savings that certain Note pursuant to which the Debtor borrowed the principal amount of $2,540,169.00 from Maine Savings (the "Maine Savings Secured Loan"). The Maine Savings Secured Loan is secured by a mortgage on the Yarmouth Property (the "Maine Savings Collateral"). The total amount outstanding under the Maine Savings Secured Loan as of the Petition Date, according to the proof of claim filed by Maine Savings (POC 21) equaled $2,572,357.35.

The Debtor intends to list the Yarmouth Property for sale immediately.[3] The net sale proceeds shall be used to pay the ~~all~~ Class 3~~5~~ Allowed Claim~~s~~ in ~~their~~ its order of priority (*i.e.*, the Town of Yarmouth, Maine Savings, Maine Revenue Services and Angela) ( The Class 3~~5~~ Claim, together with interest at the contractual rate of 4% *per annum*, shall be paid from the net proceeds from the sale of the Yarmouth Property.

[3] The Debtor will file substantially contemporaneously herewith an application to employ a real estate broker acceptable to Maine Savings to market the Yarmouth property on customary terms.

The Maine Savings Collateral shall secure the Class 3 Claim.

Class 4 - Town of Yarmouth Secured Claim

Class 4 consists of the Allowed Secured Claims of the Town of Yarmouth. On April 1, 2025, the Town of Yarmouth assessed real estate taxes against the Yarmouth Property for fiscal year 2025-2026 in the amount of $36,998.17 (the "Yarmouth Real Estate Taxes"). Pursuant to 36 M.R.S.A. § 552, an inchoate lien was placed on the Yarmouth Property to secure payment of the Yarmouth Real Estate Taxes and remains in force until the same are paid.

The Allowed Class 4 Claim, together with interest at a rate of 7.5% *per annum* pursuant to 11 U.S.C. § 511 and 36 M.R.S.A. §§ 186 and 505 , shall be paid from the net proceeds of the sale of the Yarmouth Property

All collateral securing the Town of Yarmouth's Allowed Secured Claim shall secure the Class 4 Claim.

Class 5 – TruChoice Secured Claim

Class 5 consists of the Allowed Secured Claims of TruChoice prior to the Petition Date. On or about August 5, 2022, the Debtor executed and delivered to TruChoice a Promissory Note – Disclosure Security Agreement in the original principal amount of $119,280.48 in favor of TruChoice (the "TruChoice Loan #1"). The TruChoice Loan #1 is secured by the Debtor's 2022 BMW X5 (the "BMW X5"). The amount outstanding on the TruChoice Loan #1 as of the Petition Date, according to the claim filed by TruChoice (POC 16), equaled $34,547.32.

On or about August 24, 2022, the Debtor executed to and delivered to TruChoice a Promissory Note – Disclosure Security Agreement in the original principal amount of $43,700.17 in favor of TruChoice (the "TruChoice Loan #2"). The TruChoice Loan #2 is secured by the Debtor's 2023 BMW X3 (the "BMW X3" and together with the BMW X5, the "TruChoice Collateral"). The amount outstanding on the TruChoice Loan #2 as of the Petition Date, according to the claim filed by TruChoice (POC 17), equaled $18,029.39.

Last, the Debtor entered into certain Visa Credit Card Agreement with TruChoice (the "TruChoice Credit Facility") in which Debtor agreed that any funds advanced under the TruChoice Credit Facility would be secured by the TruChoice Collateral. The amount outstanding on the TruChoice Credit Facility as of the Petition Date, according to the claim filed by TruChoice (POC 18), equaled $20,731.72.

In July 2026, the Debtor was in a car accident which resulted in the BMW X5 being considered a total loss by Debtor's insurance carrier. Debtor's insurance carrier paid out a total of $64,436.39 (the "Insurance Proceeds") for the loss of the BMW X5. The Insurance Proceeds are also included as the TruChoice Collateral.

The Allowed Class 5 Claims shall be satisfied as follows: on the Effective Date, the Debtor shall utilize the Insurance Proceeds to pay both the TruChoice Loan 1 and the TruChoice Credit Facility in full. The TruChoice Loan #2 shall be satisfied in accordance with the terms and conditions of that certain Promissory Note – Disclosure Security Agreement executed by the Debtor on August 24, 2022, which documents the TruChoice Loan #2, which shall remain secured by the BMW X3.

Class 6 – Patterson Dental Secured Claim

Class 6 consists of the Allowed Secured Claims of Patterson Dental prior to the Petition Date. On or

about October 25, 2023, the Debtor entered into that certain Installment Sale Contract – Security Agreement with Patterson Dental for the purchase of a CEREC PrimeScan Crown Scanner ("Scanner #1") of the original total price of $52,993.37 (the "Patterson Loan #1"). The Patterson Loan #1 is secured by Scanner #1 which Debtor values to be worth $25,000.00 as of the Petition Date.

Also on or about October 25, 2023, the Debtor entered into that certain Installment Sale Contract – Security Agreement with Patterson Dental for the purchase of an additional CEREC PrimeScan Crown Scanner ("Scanner #2") of the original total price of $52,993.37 (the "Patterson Loan #2"). The Patterson Loan #2 is secured by Scanner #2 which Debtor values to be worth $25,000.00 as of the Petition Date.

The Allowed Class 6 Claim obligation shall be assumed by Maine Dentistry in the context Maine Dentistry's pending chapter 11 case. The Debtor shall guaranty Maine Dentistry's obligations as to the same.

All collateral securing Patterson Dental's Allowed Secured Claim shall secure the Class 7 Note.

Class 7 – Maine Revenue Servies Secured Claim

Class 7 consists of the Allowed Secured Claims of Maine Revenue Services prior to the Petition Date. Maine Revenue Services' claim is for Debtor's individual income tax due for the tax year beginning on January 1, 2024, and ending on December 31, 2024, which, according to Maine Revenue Services' proof of claim, equaled $73,150.02 (POC 15). Maine Revenue Services filed Notices of State Tax Liens in the Cumberland County Registry of Deeds and the Oxford County Registry of Deeds, among other registries, which secured its claim against all real estate owned by the Debtor in such counties, which includes the Debtor's residence at 171 High Winds Road, Yarmouth, Maine, the Mammoth Lane Property and the Douglass Road Property (collectively, the "Maine Revenue Services Liens").

The Maine Revenue Services Lien, plus post-petition interest at a rate of 9% *per annum*, shall be satisfied from the net proceeds of the sale of the Yarmouth Property.

The Maine Revenue Services Liens shall continue to secure the Debtor's obligations under the Class 7 Payment Plan.

Class 8 – Angela Secured Claim

Class 8 is impaired. Class 8 consists of all Allowed Secured Claims of Angela, including those established in that certain Divorce Judgment entered by Hon. Susan Driscoll of the Portland District Court, State of Maine, on May 28, 2026, and approved by this Court on July 28, 2026 [DE # 115] (the "Divorce Judgment"). The Divorce Judgment called for certain payments totaling $690,000 to be paid to Angela representing the property settlement component to the Divorce Judgment (collectively, the "Property Settlement Claim"). The Settlement Claim is secured by a springing mortgage against the Yarmouth Property as well as an abstract of divorce decree filed in the Cumberland County Registry of Deeds.

The Allowed Class 8 Secured Claim shall be satisfied from the net proceeds of the Yarmouth property sale, following satisfaction of Allowed Secured Claims with priority senior to Angela.

Class 9 – Guarantor Creditors Allowed Claims

Class Nine consists of the Allowed Claims of the following creditors (collectively, the "Guarantor

Creditors"), (i) Machias Savings Bank ("Machias") with respect to the loan provided by Machias to Central Street Studios LLC, in the original principal amount of $ 1,387,500.00 dated July 14, 2022; (ii) Bangor Savings Bank ("Bangor"), with respect to the loans provided to (x) Central Street Studios LLC on October 23, 2020, in the original principal amount of $495,000.00 and on January 8, 2026, in the original principal amount of $512,000.00, (y) MD Auburn LLC on October 7, 2021 in the original principal amount of $70,000.00 and on January 29, 2021 in the original principal amount of $630,000.00, and (z) Lawlor Enterprises, LLC on January 8, 2026 in the original principal amount of $310,400.00; (iv) the United States Small Business Administration (the "SBA") with respect to the loan made to Lawlor Enterprises, LLC in the original principal amount of $500,000.00; (v) Dext Capital ("Dext") with respect to the loan provided to Lawlor Enterprises, LLC in the original principal amount of $107,000.00; (vi) Micah Sibert ("Sibert") with respect to the loan provided to Portland Esthetics, PLLC, in the original principal amount of $150,000.00; ~~and~~ (vi) Patterson Dental with respect to the purchase money financing extended to MD Auburn, LLC in the aggregate amount of $123,616.92; and (vii) GreatAmerica Financial Services Corporation with respect to the obligations due from Maine Dentistry under that certain Equipment Finance Agreement dated November 9, 2023, in the original financed amount of $205,000.00.~~.~~

Class Nine is unimpaired. All of Debtor's contingent obligations owed to the Guarantor Creditors with respect to the specified guarantor liabilities enumerated above shall be unmodified.

Class 10 – Emma Lee Campbell Allowed Claim

Class Ten is impaired. Class Ten consists of the Allowed Claims of Emma Lee Campbell, which consist of (i) a claim against the Debtor for an alleged unlawful disclosure of confidential information and negligence file as set forth in her complaint filed with the Cumberland County Superior Court for the State of Maine on June 20, 2024 (Docket No.: CV-2024-263) and (ii) a claim against the Debtor, *inter alias*, for alleged dental malpractice and vicarious liability as set forth in her complaint filed with the Cumberland County Superior Court of the State of Maine on May 29, 2026 (Docket No.: CV-2026-236). Both of Campbell's claims were submitted to the Debtor's professional liability insurance company, Aspen American Insurance Company (the "Insurer"), which has accepted coverage for both claims. The Campbell's claims are unmodified *except that* her claims shall be limited to the applicable insurance policy limits.

Campbell's Claims are unmodified except that the recovery on her Claims, if any, shall be limited

Class 11 – General Unsecured Creditors

Holders of Allowed Class 11 Claims shall receive *pro rata* distributions of Plan Cash annually after payment of administrative fees as provided as estimated in Cash Flow Projections attached hereto, which amounts represent the Debtor's proposed disposable income during the next five years. *See* 11 U.S.C. § 1129(a)(15)(B). As set forth therein, Holders of Allowed Class 11 Claims shall receive five (5) annual *pro rata payments* The first payment to the holders of the Allowed Class 9 claims shall be made on the first anniversary of the Effective Date.

Class 12 – Debtor's Interests

Class 12 is unimpaired. Class 12 consists of all the Debtor's interests in the property of the Estate.

**3. The Debtor's Assets and Causes of Action**

On and after the Confirmation Date, and subject to compliance with the terms of the Plan, the Debtor

may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Assets, for the purpose of liquidating and converting such Assets to cash, making distributions, and fully consummating the Plan. On and after the Confirmation Date, Causes of Action of the Debtor's Estate shall be preserved and retained by the Debtor free and clear of all liens, Claims, interests, and Encumbrances, and the Debtor shall have the exclusive right and standing to pursue, enforce, abandon, settle, release, and/or compromise any such Causes of Action (including the Kennison Litigation). Confirmation of the Plan and occurrence of the Effective Date thereunder shall not serve to waive, release or preclude on *res judicata* or any other ground any Claim or Cause of Action of the Debtor other than asset forth herein. In the event that the Debtor recovers proceeds from any Cause of Action, the net proceeds shall be distributed to the Debtor's Allowed Unsecured Claimants on a *pro rata* basis in accordance with the payment terms of the Plan.

Upon entry of the Confirmation Order, all Assets of the Debtor's Estate shall vest in the Debtor, free and clear of all Claims and Encumbrances, except to the extent otherwise provided in the Plan.

**4. Estimated Range of Potential Recoveries for Impaired Classes of Claims**

The estimated potential range of recovery to Holders of Allowed Claims in the Classes of impaired Claims is set forth in the chart below. Matters arising during Confirmation or in the process of allowance of a particular Claim could impact any distributions.

| Class | Type of Claim | Estimated Recovery |
|---|---|---|
| Class 1 | Franklin Savings Bank | 100% of Allowed Secured Claim |
| Class 2 | Town of Newry | 100% of Allowed Secured Claim |
| Class 3 | Maine Savings Secured Claim | 100% of Allowed Secured Claim |
| Class 4 | Town of Yarmouth Secured Claim | 100% of Allowed Secured Claim |
| Class 5 | TruChoice Secured Claim | 100% of Allowed Claim |
| Class 6 | Patterson Dental Secured Claim | 100% of Allowed Secured Claim (satisfied in Maine Dentistry Plan) |
| Class 7 | Maine Revenue Service Secured Claim | 100% of Allowed Secured Claim |
| Class 8 | Angela Lawlor Allowed Claims | 100% of Allowed Secured Claim |
| Class 9 | Guarantor Creditors Allowed Claims | Not applicable |
| Class 10 | Emma Lee Campbell Allowed Claims | Not applicable |
| Class 11 | General Unsecured Creditors | ~~NEED~~ TBD# |
| Class 12 | Debtor's Interests | Not Applicable |

Formatted Table

Formatted: Not Highlight

Formatted: Highlight

**5. Means for Executing the Plan.**

The Plan shall be funded from the following sources: (a) proceeds from the sale of the Yarmouth Property; (b) as to claims of TruChoice and Emma Lee Campbell, insurance proceeds not available for distribution to creditors as a whole; (c) revenue for the operation of certain of the Debtor's businesses on a

going forward basis[4]; and (d) recoveries from Causes of Action (if any) (including the Kennison Litigation).

***The reader's attention is directed to the Cash Flow Projections attached hereto as Exhibit A for more information on the disposition of the net proceeds from the sale of the Yarmouth Property and projected revenue from the Debtor's various businesses.***

In the event that any class allowed to vote is deemed impaired under the Plan and refuses to accept the terms of the same, the Debtor shall and hereby does move the Bankruptcy Court to confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code. All Claims of creditors and/or other parties in interest shall be satisfied solely in accordance with the Plan.

**6. Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Confirmation Date for the following purposes:

(a) To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or interest, including, without limitation, any Administrative Claim;

(b) To hear and determine all Claims arising from rejection of any Executory contract, including leases, and to consummate the rejection and Termination thereof;

(c) To liquidate damages in connection with any disputed contingent or unliquidated Claims;

(d) To adjudicate all Claims to, or ownership of any Assets of, the Debtor or in any proceeds thereof arising prior to and after the Effective Date;

(e) To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor prior to the Effective Date;

(f) To enter such Orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(g) To hear and determine any and all Causes of Action;

(h) To hear and determine any and all Fee Claims and all other Administrative Expenses which may be pending on, or made after, the Confirmation Date;

(i) To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

(j) To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Chapter 11 Case, or any controversy or dispute which may

---

[4] Because Portland Esthetics has been historically unprofitable, the Debtor is in the process of winding down its operations and expects to have completed that process by the end of the year.

affect the Debtor's ability to implement or fund the Plan; and

(k) To hear and determine such other matters as the Bankruptcy Court, in its reasonable discretion, shall deem appropriate.

**ALL CREDITORS THAT FILED PROOFS OF CLAIM IN THE CASE MAY BE DEEMED TO HAVE CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT FOR ALL PURPOSES WITH RESPECT TO SUCH CLAIMS.**

**7. Treatment of Executory Contracts and Unexpired Leases**

**a. Assumed Executory Contracts**

Under the Plan, unless the subject of a motion to assume pending as of the Effective Date, or dealt with by an Order of this Court entered on or prior to the Effective Date, any and all Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected as of the Effective Date, if not earlier rejected by other Orders of the Bankruptcy Court,

Any claim for damages arising from the rejection or deemed rejection of an Executory Contract or Unexpired Lease must be filed on or before thirty (30) days after the date of the Confirmation Order, or by such other date as may be specified by Order of the Bankruptcy Court and, if not so filed, will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan. All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 11 Claims.

**b. Rejection of Executory Contracts and Leases**

Under the Plan, unless identified above as an Assumed Contract, all executory contracts or unexpired leases are rejected as of the Confirmation Date (the "**Rejected Contracts**").

**IF THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE RESULTS IN DAMAGES TO THE OTHER PARTY OR PARTIES TO SUCH CONTRACT OR LEASE, THEN ANY CLAIM FOR SUCH DAMAGES, IF NOT PREVIOUSLY EVIDENCED BY A FILED PROOF OF CLAIM, SHALL BE FOREVER BARRED AND SHALL NOT BE ENFORCEABLE AGAINST THE ESTATE, THE DEBTOR, HIS ASSETS OR AGENTS, OR SUCCESSORS OR ASSIGNEES, UNLESS A PROOF OF CLAIM IS FILED WITH THE BANKRUPTCY COURT AND SERVED UPON COUNSEL FOR THE DEBTOR ON OR BEFORE THIRTY (30) DAYS AFTER THE DATE OF THE CONFIRMATION ORDER, OR BY SUCH OTHER DATE AS MAY BE SPECIFIED BY ORDER OF THE BANKRUPTCY COURT AND, IF NOT SO FILED, WILL BE DEEMED DISALLOWED, DISCHARGED, AND FOREVER BARRED FROM RECEIVING ANY DISTRIBUTION UNDER THE PLAN.**

**8. Effect of Confirmation of the Plan**

There are important provisions contained in the Plan that are not restated in this Disclosure Statement. You are encouraged to read the Plan carefully. The following is a summary of certain provisions contained in the Plan:

**a. Binding Effect of Confirmation**

The provisions of the Plan shall bind all Holders of Claims and interests, whether or not they accept the Plan. Confirmation will bind the Debtor, all creditors, Holders of Claims and interests, and any other party in interest to the provisions of the Plan. If the Plan is confirmed by the Bankruptcy Court, then the treatment of Claims set forth in the Plan supersedes and replaces any agreements or rights the Holders of Claims have in or against the Debtor and/or the Estate and/or the Assets.

**b. Exculpation**

According to the Plan, neither the Debtor, nor any of his respective attorneys, consultants, advisors, and agents (acting in such capacities), shall have or incur any liability to any entity for any act taken or omitted to be taken between the Petition Date and the Effective Date in the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, the Disclosure Statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the provisions of this section shall not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct, ~~or~~ breach of fiduciary duty~~. Any of the forgoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan~~, fraud or criminal activity..

**c. Discharge of Debtor**

To the fullest extent allowable under the Bankruptcy Code, and except as expressly provided otherwise in the Plan, the Debtor shall have the full benefit of the discharge provided by Bankruptcy Code § 1141(d). Without limiting the generality of the foregoing, and except as provided in the Plan, the Debtor shall, in accordance with § 1141(d)(5), be permanently released and discharged from all Claims, and all other Claims, Encumbrances, and debts that arose before the Confirmation Date whether or not any such Claim, Encumbrance or debt has been scheduled by the Debtor, a proof of claim has been filed or deemed filed, any such Claim is Allowed, or the Holder of any such Claim has accepted the Plan; provided, however, that nothing herein shall release or discharge the Debtor with respect to his obligations to make the payments and to provide the other consideration which is described in this Plan.

**d. Injunction and Stay**

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the close of the Chapter 11 Case. The entry of the Confirmation Order shall constitute a stay and injunction applicable to all Claims, Encumbrance, and debts discharged.

**9. Miscellaneous Additional Provisions**

**a. Claims Subject to Allowance**

Notwithstanding any other provision of the Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

**b. Pre-petition Claims and Amendments**

Each Claim as to which a proof of claim is required to be filed on or before the Bar Date and as to

which a proof of claim was not filed on or before the Bar Date shall not, under any circumstances, become an Allowed Claim. In no event shall the Allowed Amount of any Claim against the Debtor exceed the amount set forth in a proof of claim therefore filed on or before the Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of claim in which case any such amended proof of claim must be filed by the Confirmation Date.

**c. Objections to Pre-petition Claims and Interests**

Claims and interests that arose prior to the Petition Date, and which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be allowed in full, unless an objection to such Claim or interest is filed on or before the date which is thirty (30) days after the Confirmation Date. Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of the Plan, except as otherwise ordered by the Court.

**d. Bar Date for an Objection to Post-Petition Claims**

Any Claim entitled to priority under Bankruptcy Code § 507(a)(2) arising before the Confirmation Date and still outstanding sixty (60) days thereafter shall be forever barred unless it is the subject of a proof of claim (or, in the case of a Fee Claim, an application for compensation) filed with the Bankruptcy Court on or before the Post-Petition Bar Date. Any Claim that is the subject of such proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within thirty (30) days after the Post-Petition Bar Date or such other date as is provided by Order upon motion of the Debtor, except that Fee Claims shall be Allowed only by Order of the Bankruptcy Court.

**e. Delivery of Distributions**

Distributions and deliveries to Holders of Allowed Claims will be made at the addresses reflected in the proof of claim filed by the Holders of Allowed Claims or, if no proof of claim was filed, at the addresses set forth in changes delivered to the Debtor's Schedules; or at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim. If any distribution is returned as undeliverable, no further distributions to the Holder will be made unless and until the Debtor is notified of the Holder's then current address, at which time all missed distributions will be made to the Holder without interest. All Claims for undeliverable distributions must be made to the Debtor on or before the six (6th) month anniversary of the delivery date. After that date, all unclaimed property will be distributed pursuant to the terms of the Plan and the Claim of any Holder with respect to such property will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan.

**f. Means of Cash Payment**

Cash payments made pursuant to the Plan will be in United States funds, by the means agreed to by the Debtor and the respective Holders of Allowed Claims, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtor shall reasonably determine.

**g. Time Bar to Cash Payments**

Checks issued by the Debtor with respect to Distributions to Holders of Allowed Claims pursuant to this Plan will be null and void if not cashed within one hundred twenty (120) days of the date of their issuance. Requests for reissuance of any check shall be made to the Debtor by the Holder of the Allowed Claim with

respect to which the check originally was issued. Any Claim in respect of such a voided check must be made on or before six (6) months after the date of issuance of the check. After that date, all Claims in respect of void checks will be discharged and forever barred and the Cash, including interest earned thereon, if any, shall be treated as an additional recovery of proceeds for distribution as of the date of expiration of said six (6) month period and thereafter shall be held and distributed in accordance with the terms of the Plan.

**h. Modification of Confirmed Plan**

After the Confirmation Date, the Debtor may modify the Plan ~~in accordance with Bankruptcy Code § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Plan, so long as the interests of Holders of Claims and interests are not materially and adversely affected thereby. However, the Debtor may not alter the treatment of Classes Five and Six or the discharge provisions of the Plan absent consent of all holders of Allowed Claims in those Classes.~~ as provided under Bankruptcy Code § 1127.

**i. Closing of Case**

The Plan shall be deemed to have been substantially consummated when all of the requirements of Bankruptcy Code § 1101(2) have been satisfied. The Chapter 11 Case shall be deemed closed at such time as the Order closing the case pursuant to Bankruptcy Code § 350 has been entered by the Bankruptcy Court on the motion of the Debtor, and the Order becomes a Final Order.

**j. Severability of Plan Provisions**

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**k. Exemption from Transfer Taxes**

Pursuant to § 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan and any other deeds, bills of sale or assignment executed in connection with any disposition of Assets under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

**E. Feasibility of the Plan.**

Under the Bankruptcy Code, in order to confirm the Plan, the Debtor must demonstrate that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor, unless such liquidation or reorganization is proposed in the Plan. In other words, the Debtor must demonstrate

that the Plan is "feasible." The Plan is feasible because it proposes to streamline and tighten his business operations (including by shutting down Portland Esthetics), cutting his personal expenditures, and selling a valuable asset, the Yarmouth Property. The Cash Flow Projections, which were prepared by the Debtor in conjunction with his financial advisor, are conservative and achievable based on the businesses' operations and they ensure that all of the Debtor's projected disposable income, as that term is used in 11 U.S.C. § 1129(a)(15)(B), is dedicated to the Plan.

**F. Risk Factors**

The primary risk factors affecting the amount and timing of the distributions to Holders of Claims are (a) the sale of the Yarmouth Property may not realize the expected price of $3,500,000 used in the Cash Flow Projections; and/or (b) one or more of the Debtor's businesses may not perform consistent with the Cash Flow Projections. Given the nature of the Yarmouth Property and comparables the Debtor has reviewed, he believes that that Property should sell for $3,500,000. As to the business revenue projections, the Debtor and his financial advisor have utilized conservative assumptions as to future to arrive at these figures. As such the Debtor believes that while these risk factors exist, they are unlikely to manifest.

Although the Debtor believes that the Plan does or will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there are no assurances that the Bankruptcy Court will confirm the Plan as proposed. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

**G. Plan Alternatives and Liquidation Analysis**

One alternative to the Plan is the liquidation of the Assets in a proceeding under chapter 7 of the Bankruptcy Code, and the distribution of the net proceeds thereof to secured, priority, and unsecured creditors in the order of priority and manner provided under the Bankruptcy Code. In general, this would require that secured creditors be paid first, then administrative expense creditors, including administrative expense creditors in the Chapter 11 Case and in the chapter 7 case (with the latter having priority), then priority creditors, with the balance, if any, distributed to unsecured creditors on a *pro Rata* basis.

As of the Effective Date of the Plan, the Debtor will likely have the following pools of Assets: (a) real property owned by the Debtor (or owned by entities owned and controlled by the Debtor); (b) certain personal property, including vehicles, cash and membership interests in his various business entities; and (c) proceeds of Causes of Action, if any, which the Debtor and/or the estate have brought and/or may elect to bring, including without limitation, any proceeds of causes of action and claims for recovery of avoidable transfers, pursuant to state law and/or chapter 5 of the Bankruptcy Code.

The Debtor believes that any liquidation of his Assets by a chapter 7 trustee would result in:

**Formatted:** Not Highlight

(i) Franklin Savings Bank (Class 1), Town of Newry (Class 2), and Maine Revenue Service (Class 7), being paid in full from the liquidation of the Douglass Road Property and the Mammoth Lane Property;

(ii) TruChoice (Class 5) being paid in full from the liquidation of its collateral;

(iii) and the Town of Yarmouth (Class 4) being paid in full from the liquidation of the Yarmouth Property and Maine Savings (Class 3) taking all remaining funds from such sale, which would be over $100,000 less than what Maine Savings would receive under the Plan.

The liquidation of unencumbered personal property, Debtor's cash and any excess funds available following the sale of encumbered Assets, would total $189,271.72 for distribution to all other creditors, which would be insufficient to pay Priority Non-Tax Claims and Priority Tax Claims in full.

**No Priority Claims would be satisfied in full and no General Unsecured Creditor would receive any value under a chapter 7 liquidation.** Attached hereto as ***Exhibit B*** is a liquidation analysis indicating that the Plan will result in better outcomes for all creditors and Holders of Claims and Interests.

The "best interests" of impaired creditors test requires that each Holder of a Claim that has not voted to accept the Plan and belongs to an impaired class receive or retain under the Plan property of a value that is not less than the value such Holder would receive or retain if the Debtor's Assets were liquidated under chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(7). As discussed above, under the proposed the Plan, Holders of Claims will receive ________________________, which is greater than the value that they would receive from a chapter 7 liquidation. Thus, as discussed above, the Debtor believes that the Plan is in the best interests of creditors and Holders of Claims and Interests and that it should be accepted and confirmed.

Finally, if the Plan is not confirmed, additional alternatives include proposal of a different plan, conversion of this Case to a case under Chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11 Case. The Debtor believes that neither of these alternatives is preferable to the proposed Plan.

Dismissal of the Chapter 11 Case would have the effect of restoring (or attempting to restore) all parties to the *status quo*. Upon dismissal of the Chapter 11 Case, the Debtor would lose the protection of the Bankruptcy Code.

**H. Certain Federal Tax Consequences**

The federal, state, and local tax consequences of the Plan may be complex and, in some cases, uncertain. Such consequences may also vary based upon the individual circumstances of each Holder of a Claim or interest. **ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAM. THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR, AND SHALL NOT BE DEEMED TO CONSTITUTE, ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN.** Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any distributions under the Plan.

**TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE; (B) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT ADVISOR.**

**I. No Duty to Update Disclosures**

The Debtor has no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Debtor is required to do so pursuant to an order of the Bankruptcy Court. Delivery or service of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

**J. Recommendations and Conclusion**

The Debtor submits that the Plan complies in all respects with Chapter 11 of the Bankruptcy Code and is preferable to dismissal of the Chapter 11 Case or conversion to chapter 7. As such, the Debtor recommends to Holders of Claims who are entitled to vote on the Plan that they vote to accept the same. The Debtor reminds such Holders that each ballot, signed and marked to indicate the Holder's vote, must be received by the Debtor's counsel **no later than ______________, 2026, at 5:00 p.m. (EST)**.

Dated: ~~September 21~~______________, 2026

/s/ David C. Johnson
David C. Johnson, Esq.

Attorney for Debtor

MARCUS | CLEGG
16 Middle Street, Suite 501
Portland, ME 04101
(207) 828-8000
bankruptcy@marcusclegg.com